757 F.2d 1435
 Walter Lloyd BLAIR, Appellant,
v.
SHENANDOAH WOMEN'S CENTER, INC.; Barbara Kukla; Janis
Christopher; Berkeley County Board of Education;
Martinsburg City Police Department; Officer Danny Lyons;
Officer John Doe No. 1; Officer John Doe No. 2; Debbie
Stubberfield; Miss Melissa Butts; Ms. Dana "Doe"; United
Way and The State of West Virginia, Appellees.
In re Gene D. BENNETT, Michael D. Bennett, Genele D.
Bennett, Next Best Friend, Gene D. Bennett, Plaintiffs,
v.
SHENANDOAH WOMEN'S CENTER, INC., et al., Defendants.
 No. 84-1130.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 8, 1985.
Decided March 7, 1985.
 
 Edward J. Walinsky, Falls Church, Va. (Robert W. Goodson; William J. Carter; Carr, Goodson & Lee, P.C., Washington, D.C., John F. Brown, Jr.; Brown, Harner & Busch, L.C., Elkins, W.Va., on brief), for appellant.
 William T. Wertman, Jr., Martinsburg, W.Va. (WV Legal Services Plan, Inc.; Charles F. Printz, Jr.; J. Oakley Seibert; April L. Dowler, Martinsburg, W.Va., on brief), for appellees.
 Before WINTER, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.
 HARRISON L. WINTER, Chief Judge:
 
 
 1
 The district court required Walter Lloyd Blair, Esq., and his client, Gene D. Bennett, to pay defendants' attorneys' fees for bringing and pressing a frivolous and scandalous suit. Blair alone appeals, and we affirm.I.
 
 
 2
 Bennett's lawsuit followed within two months after his wife sought shelter from his abuse at Shenandoah Women's Center, Inc. (Shenandoah). Blair filed the suit on behalf of Bennett and his two minor children (who were in the custody of his wife), claiming "Discrimination Based on Sex, Conspiracy False Arrest, Malicious, Prosecution, Assault and Battery, Negligence, Defamation of Character, Intentional Infliction of Emotional Distress, and Harrassment [sic]." Recovery of ten million dollars, attorneys' fees and injunctive relief was sought from each of thirteen defendants, including the United Way, the State of West Virginia (despite an obvious Eleventh Amendment bar), unknown police officers, the Berkeley County Board of Education, Shenandoah, and several employees of Shenandoah. The complaint alleged that Bennett had a constitutional right to Shenandoah's services, that Shenandoah had no right to shelter his wife and children against his wishes, and that Shenandoah had illegally frustrated his attempts to communicate with his wife (notwithstanding her desire to avoid him).[1] Several defendants were sued without any explanation why. No allegations were made to support a race discrimination claim. Scandalous and irrelevant allegations were made about the personal lives of Shenandoah's employees.
 
 
 3
 All defendants moved to dismiss for failure to state a claim. Blair then filed motion after motion for extensions of time and for leave to amend the complaint, though no new complaint was ever tendered. Meanwhile, he neither responded to defendants' discovery nor conducted any discovery of his own. Eventually the district court heard the motion to dismiss, at which time Blair argued his case in a way suggesting that he had not researched the legal issues at all. The district court granted defendants' motions to dismiss, and suggested a hearing on attorneys' fees.
 
 
 4
 Blair and his own counsel, but not Bennett, appeared at the attorneys' fees hearing. Blair had sought to withdraw as Bennett's attorney, but the district court would not allow it because, contrary to Blair's representation, Bennett had not retained other counsel. Blair testified on his own behalf and argued on behalf of his client. Cross-examination of Blair showed the paucity of his case preparation and various improprieties in his conduct of the litigation. Blair then made a few vague comments as Bennett's counsel.
 
 
 5
 The district court noted that neither Bennett nor Blair "has responded to the imposition of sanctions issue as such, other than in a very general sort of way," and imposed attorneys' fees on both of them. Bennett requested a rehearing, and appeared represented by new counsel. Bennett claimed that he was unaware of how Blair was conducting the litigation. Blair's attorney appeared to cross-examine Bennett. After this second hearing the district court reaffirmed its earlier ruling.
 
 
 6
 The district court found a seven-page litany by Shenandoah detailing Bennett's and Blair's misconduct to be "candidly expressed and factually accurate." It accordingly incorporated these factual findings into its order imposing attorneys' fees. The findings refer to Bennett's and Blair's "obvious bad faith" in filing the complaint, their "dilatory tactics", their "frivolous" legal positions, and their "scandalous" accusations. The district court concluded that such bad faith justified imposing an award of fees against Bennett.
 
 
 7
 The district court then stated that "[t]his Court has inherent power to assess attorney's fees against an attorney, which power is not limited to cases filed in bad faith, but includes actions leading to the filing of suit and includes conduct during the course of the litigation." The district court justified assessing fees against Blair based both on this inherent power and on Fed.R.Civ.P. 11. It noted, however, that the August 1, 1983 amendments to Rule 11 regarding the imposition of attorney sanctions did not become effective until after Bennett's case was dismissed.
 
 II.
 
 8
 Blair concedes that, in a proper case, attorney's fees may be assessed against counsel under 28 U.S.C. Sec. 1927,[2] Fed.R.Civ.P. 11,[3] or under the inherent power of the court. See Roadway Express, Inc. v. Piper, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980); Robinson v. Ritchie, 646 F.2d 147, 148-49 (4 Cir.1981). We agree, and we note that since the conduct leading to sanctions here, Rule 11 has been amended[4] to discourage "dilatory or abusive tactics" and "to streamline the litigation process by lessening frivolous claims or defenses."[5]
 
 
 9
 Blair nevertheless contends that the award against him should be set aside because: (1) he was prejudiced by being forced to represent Bennett at the hearing on the imposition of sanctions, since Bennett's interests conflicted with his own, (2) there was no finding that he acted in bad faith, and (3) fees cannot be assessed against him absent a showing that he was more culpable than his client.
 
 III.
 
 10
 We see no merit in Blair's general claim of prejudice. The transcript of the hearing on sanctions shows that Blair was represented by counsel and had full opportunity to explain and excuse his handling of the case. Whatever potential prejudice was inherent in the joint representation was prejudice to Bennett--the possibility that Blair might shift to Bennett the blame which properly attached to Blair. Of course, Bennett has not appealed the imposition of sanctions on him, and any actual prejudice to Bennett was apparently obviated when he was given a second hearing with independent counsel.
 
 
 11
 Blair next argues that the district court did not find that he acted in bad faith. Shenandoah's cataloguing of Blair's misdeeds, however, contains just such a finding, and the district court made this listing part of its findings. Further, regardless of whether the evidence is deemed to prove 22, 19, or, as Blair contends, only 4 basic instances of misconduct, we have no doubt that it tallies up to a correct finding of subjective bad faith. Before us, Blair sought to avoid this conclusion by arguing, in effect, that he was obliged as Bennett's attorney to make the allegations desired by Bennett and to conduct the case as Bennett wished. Nothing could be farther from the truth. A lawyer must always remember that he is an officer of the court. He may zealously represent his client, but only within the bounds of 28 U.S.C. Sec. 1927, Fed.R.Civ.P. 11, as amended, and the court's inherent power to govern and regulate the conduct of litigation before it. See Gullo v. Hirst, 332 F.2d 178 (4 Cir.1964). We emphatically reject any suggestion that a lawyer may shield his transgressions behind the simplistic plea that he only did what his client desired.
 
 
 12
 Finally, we think that Blair misreads Bernstein v. Menard, 557 F.Supp. 92, 94-95 (E.D.Va.1983), aff'd, 728 F.2d 252 (4 Cir.1984) when he argues that fees may be assessed against him only if he is "more blameworthy" than his client. In Bernstein the district court remarked that "the standard for assessing fees against counsel must be somewhat higher than that for parties." 557 F.Supp. at 94 (emphasis added). It did so in justifying an award of attorneys' fees against the unsuccessful plaintiff in a civil rights suit but not against his attorney. Where, as here, however, the lawyer's conduct satisfies the standard for assessing fees, he does not escape liability just because his client's behavior was even worse.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 A state court entered an order directing Bennett to stop abusing his wife. The parties were later divorced, with Mrs. Bennett receiving custody of the children
 
 
 [2]
 28 U.S.C. Sec. 1927 reads:
 Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.
 
 
 [3]
 Prior to the amendment effective August 1, 1983, Rule 11 read:
 Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading and state his address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The rule in equity that the averments of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a pleading is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the pleading had not been served. For a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action. Similar action may be taken if scandalous or indecent matter is inserted.
 
 
 [4]
 Effective August 1, 1983, Rule 11 was amended to read:
 Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The rule in equity that the averments of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
 
 
 [5]
 The rationale for the 1983 amendment is expressed in the following extract from the Notes of Advisory Committee on Rules:
 Experience shows that in practice Rule 11 has not been effective in deterring abuses. See 5 Wright & Miller, Federal Practice and Procedure: Civil Sec. 1334 (1969). There has been considerable confusion as to (1) the circumstances that should trigger striking a pleading or motion or taking disciplinary action, (2) the standard of conduct expected of attorneys who sign pleadings and motions, and (3) the range of available and appropriate sanctions. See Rodes, Ripple & Mooney, Sanctions Imposable for Violations of the Federal Rules of Civil Procedure 64-65, Federal Judicial Center (1981). The new language is intended to reduce the reluctance of courts to impose sanctions, see Moore, Federal Practice p 7.05, at 1547, by emphasizing the responsibilities of the attorney and reenforcing those obligations by the imposition of sanctions.
 The amended rule attempts to deal with the problem by building upon and expanding the equitable doctrine permitting the court to award expenses, including attorney's fees, to a litigant whose opponent acts in bad faith in instituting or conducting litigation. See, e.g., Roadway Express, Inc. v. Piper, 447 U.S. 752 [100 S.Ct. 2455, 65 L.Ed.2d 488] (1980); Hall v. Cole, 412 U.S. 1, 5 [93 S.Ct. 1943, 1946, 36 L.Ed.2d 702] (1973). Greater attention by the district courts to pleading and motion abuses and the imposition of sanctions when appropriate, should discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses.