790 F.2d 1299
 Dickey GAINES, Plaintiff-Appellant,
v.
Michael P. LANE and James Thieret, Defendants-Appellees.
Joe WOODS, et al., Plaintiffs-Appellants,
v.
Michael P. LANE, Individually, and as Director, Illinois
Department of Corrections, Michael O'Leary, Individually,
and as Chief Administrative Officer, Stateville Correctional
Center, and Willa Jean Aldworth, Individually, and as Mail
Room Supervisor, Stateville Correctional Center, Defendants-Appellees.
 Nos. 85-1449, 85-1745.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 12, 1985.
Decided May 6, 1986.*
 
 Elaine G. Fishman, Isham, Lincoln & Beale, Chicago, Ill., for plaintiff-appellant.
 Michael J. Hogan, Office of Ill. Atty. Gen., Chicago, Ill., for defendants-appellees.
 Before COFFEY, FLAUM and RIPPLE, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 This consolidated appeal presents two similar constitutional challenges to the new Illinois Department of Corrections' regulations governing the treatment of prisoner mail. In both instances, the district courts dismissed the complaints pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim on which relief could be granted.[1] The appellants contend that dismissal at this stage of the litigation was error. We disagree. Accordingly, we affirm the judgments in both actions.
 
 I. THE COMPLAINT
 
 2
 The appellants are individuals who have been committed to the custody of the Illinois Department of Corrections (Department). As inmates, they are subject to the Department's regulations covering the handling of incoming and outgoing mail. Prior to August 1, 1984, these rules were codified as Regulation 823. However, on that date, the Department enacted new regulations, Rule 525.100 et seq. The appellants have alleged that these new mail regulations are harsher than the previous rules and constitutionally deficient in a number of ways.
 
 
 3
 The mail regulations apply to both privileged and non-privileged mail. In general, privileged mail is defined as mail which is either sent to or received from attorneys or specified governmental and judicial officers. Non-privileged mail is, accordingly, comprised of all mail which does not fall within that definition. The appellants have alleged that the regulations are unconstitutional as they affect both types of mail.
 
 
 4
 Non-Privileged Mail. The appellants allege that the regulations pertaining to non-privileged mail infringe on their first amendment right to substantially unrestricted speech. They first object to Rule 525.130 which, unlike its predecessor, requires all non-privileged outgoing mail to be unsealed when delivered to the mail room. That rule also permits prison employees to read all outgoing non-privileged mail and to inspect it for contraband. The regulations are objectionable, contend the appellants, because they do not specify 1) which prison employees may read the mail, or 2) what showing is necessary (i.e.: security, prisoner safety, etc.) to support such an intrusion. The appellants reiterate these same objections with respect to Rule 525.140 which subjects incoming non-privileged mail to the same inspection.
 
 
 5
 In addition, Rule 525.130(h) permits Department employees to censor, reproduce, or withhold from delivery non-privileged mail which they believe presents a threat to prison security or safety. (Rule 525.140(g) provides a similar regulation for incoming mail.) The rule continues by enumerating nine instances when such a threat exists. The appellants argue that this regulation is deficient in two respects. First, the regulation includes--as one of the nine potentially dangerous instances--letters which "solicit[ ] gifts, goods or money from other than family members." Rule 525.130(h)(6). The appellants allege that this provision cannot possibly promote prison security. Second, the appellants contend that the nine instances are merely illustrative of the types of situations in which mail restrictions are warranted. Since the list is not exhaustive, the appellants claim that the rules impermissibly give prison employees unfettered discretion to decide which items of mail present a threat to the prison.
 
 
 6
 Privileged Mail. The regulations do not specifically provide that incoming privileged mail may be read. However, Rule 525.140(b) does allow the mail to be inspected "to determine that nothing other than legal or official matter is enclosed." Further, Rule 525.110 does not include letters to and from the news media within the definition of privileged mail. The appellants contend that both of these provisions unnecessarily intrude upon their first amendment rights and, therefore, should be stricken unless the Department can demonstrate some justification for their necessity.
 
 
 7
 Other Alleged Violations. In addition to these substantive first amendment claims, the appellants also argue that the regulations are impermissibly vague. Specifically, the appellants point to the restrictions found in Rules 525.130(a) and (b). Those sections allow an inmate to mail--at state expense--the equivalent of three one-ounce, first-class letters each week. Prisoners may also send additional letters provided they have sufficient funds in their prison accounts. If a prisoner does not have sufficient funds, he may nonetheless "send reasonable amounts of legal mail at State expense." The appellants contend that, because the regulations define neither "reasonable" nor "legal," they are impermissibly vague.
 
 
 8
 Finally, the appellants claim that the Department's rules violate due process inasmuch as they do not afford expeditious review of decisions to withhold prisoner mail.
 
 
 9
 In sum, the appellants have alleged that the mail regulations infringe on first amendment interests, are impermissibly vague, and fail to provide adequate procedures for contesting adverse decisions. Faced with these challenges, the district courts in both cases dismissed the complaints for failure to state a claim. They believed that the regulations were consistent with the general guidelines set forth by the Supreme Court in Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), and by the courts of appeals in subsequent cases. We now examine the correctness of these decisions.
 
 II. DISCUSSION
 
 10
 It is well settled that a "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Benson v. Cady, 761 F.2d 335, 338 (7th Cir.1985) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957)). While this standard is often difficult for the movant to meet--given the complexities of constitutional litigation--it is not insuperable. A litigant will not be able to bypass the strictures of Rule 12(b)(6) simply by alleging a constitutional challenge. If a complaint alleges that a state regulation, on its face, is inconsistent with a specific provision of the United States Constitution, that complaint will be dismissed where a thoughtful reading of the regulation convinces the district court that the regulation is plainly within the bounds of the Constitution. With this in mind, we now proceed to the appellants' claims.
 
 
 11
 We begin our analysis with the Supreme Court's opinion in Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). In Procunier, the Court held that censorship of prisoner mail would be justified if the following criteria were met: "First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression.... Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." Id. at 413. However, the Procunier Court did not simply recite this two-part test. Rather, the Court continued by explaining the degree to which prison administrators must justify their regulations:
 
 
 12
 This does not mean, of course, that prison administrators may be required to show with certainty that adverse consequences would flow from the failure to censor a particular letter. Some latitude in anticipating the probable consequences of allowing certain speech in a prison environment is essential to the proper discharge of an administrator's duty. But any regulation or practice that restricts inmate correspondence must be generally necessary to protect one or more of the legitimate governmental interests identified above.
 
 
 13
 Id. at 414, 94 S.Ct. at 1811 (footnote omitted). In short, a regulation which generally advances a legitimate governmental interest of sufficient importance is not invalid simply because the government does not demonstrate that each and every application of that regulation necessarily furthers that interest.
 
 Non-Privileged Mail
 
 14
 * With respect to non-privileged mail, the regulations in this case provide that all incoming or outgoing mail may be inspected for contraband (Rules 525.130(g); 525.140(d)) and "spot check[ed] and read." Rules 525.130(h); 525.140(g). These regulations cannot be the basis of a valid constitutional challenge; this court has already determined that provisions of this type do not impermissibly intrude on first amendment rights. In Smith v. Shimp, 562 F.2d 423 (7th Cir.1977), we held that prison officials could read non-privileged mail, on a spot-check basis, in order to detect possible escape plans or other threats to jail security. At that time, we also held that it was entirely proper for prison officials to inspect mail for contraband. Since the same governmental justifications--jail security and the possibility of escape--are obviously present at the institutions managed by the Illinois Department of Corrections, we see no reason to part with our holding in Shimp.
 
 B
 
 15
 Rules 525.130(h) and Rule 525.140(g) are also challenged because they allow incoming and outgoing non-privileged mail to be censored, reproduced, or withheld from delivery if it presents a threat to prison security or safety.[2] Notably, these regulations have a built-in justification; the rules specifically say that prison officials may only take the enumerated actions when the mail "presents a threat to security or safety." The rules then detail the prohibited topics which will trigger their application, including: threats of physical harm, blackmail, extortion; plans to escape; coded letters.
 
 
 16
 After Procunier and Shimp, it is clear that prison security is a sufficiently important governmental interest to justify limitations on a prisoner's first amendment rights. See also Bell v. Wolfish, 441 U.S. 520, 546, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). In this instance, the district court was correct in concluding that nothing would be gained by proceeding past the pleadings stage. The regulations already contain a legislative determination that safety and security are important interests in the proper administration of prison life. Government affidavits could not, and constitutionally need not, show more. Simply put, then, at the pleadings stage of this litigation, we already know 1) the regulation's justification and 2) that the justification is both valid and substantial. Rules 525.130(h) and 525.140(g) therefore meet the first part of the Procunier test.
 
 
 17
 As for the second part of the test, it is equally clear that the regulations are well-tailored to minimize their intrusiveness. First, as we have already noted, the rules only allow prison officials to censor mail which presents a threat to prison security. Second, the rules contain nine examples which explain with greater specificity what actually constitutes a threat to security. As Judge McGarr aptly noted, "these regulations give prison officials and other employees ... sufficient guidance in determining what mail can be censored and they are not overly broad." Woods v. Lane, No. 84 C 7745, Opinion and Order at 6 (N.D.Ill. Mar. 19, 1985).[3] Censorship is hardly left to the prison officials' "unfettered discretion."[4] Finally, the regulations also provide that all prisoners will be given written notice when they have been prohibited from either sending or receiving a letter. Thus, the prisoner may "grieve any action taken by officials; if this is not satisfactory, he still has the state remedy of mandamus to compel prison officials to act in accordance with the prescribed rules, and he may also resort to action in federal court under 42 U.S.C. Sec. 1983 for a specific infringement." Gaines v. Lane, No. 84-3269, Order at 5 (S.D.Ill. Feb. 25, 1985).[5] In light of these safeguards, we hold that, as a matter of law, these regulations strike "a proper balance between the constitutional rights of the appellants and the legitimate concerns of prison officials." Meadows v. Hopkins, 713 F.2d 206, 211 (6th Cir.1983).
 
 Privileged Mail
 
 18
 * Rule 525.140(b) is equally justifiable. That rule allows incoming privileged mail to "be opened in the presence of the committed person to whom it is addressed to inspect for contraband, to verify the identity of the sender, and to determine that nothing other than legal or official matter is enclosed." This practice has already been condoned by the Supreme Court. In Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Court stated, with respect to privileged mail:
 
 
 19
 As to the ability to open the mail in the presence of inmates, this could in no way constitute censorship, since the mail would not be read. Neither could it chill such communications, since the inmate's presence insures that prison officials will not read the mail. The possibility that contraband will be enclosed in letters, even those from apparent attorneys, surely warrants prison officials' opening the letters.
 
 
 20
 Id. at 577, 94 S.Ct. at 2985. We therefore decline the appellants' invitation to require the Department to justify anew a clearly permissible regulation. Quite obviously, a different situation would be present if the prison officials actually read the privileged mail. However, that "as applied" argument is not before us today. See supra note 1. Rather, the appellants have simply challenged a Department regulation which, on its face, allows prison officials to search privileged mail for contraband while the prisoners look on. That is precisely what Wolff permits. See Jensen v. Klecker, 648 F.2d 1179, 1182 (8th Cir.1981).
 
 B
 
 21
 The appellants also assert that the failure to include mail to and from the news media as privileged mail constitutes a violation of their first amendment rights.[6] Department Rule 525.110 defines fourteen categories of mail which will be treated as privileged.[7] Communication with the news media is not among the listed categories. The only question for our review is whether the first amendment requires media correspondence to be treated as privileged.
 
 
 22
 In deciding this issue, we must adhere to the principles established by the Supreme Court in Pell v. Procunier, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) (upholding a prison regulation which banned face-to-face interviews between media representatives and inmates of their choosing). Access to the media gives the incarcerated person an opportunity to communicate with the general public and a means of petitioning the government for redress of grievances. However, an inmate retains only "those First Amendment rights that are not inconsistent with his status as a prisoner...." Id. at 822, 94 S.Ct. at 2804. Furthermore, in determining whether an inmate's first amendment rights are being unduly impeded, prison regulations "cannot be considered in isolation but must be viewed in the light of the alternative means of communication permitted under the regulations...." Id. at 823, 94 S.Ct. at 2804.
 
 
 23
 In addressing an inmate's interest in communicating with the general public, Pell upheld the interview regulation because the prisoners had sufficient alternative means by which they could communicate with the general public. 417 U.S. at 823-24, 94 S.Ct. at 2804, 2805. One such alternative means was a prisoner's ability to communicate with the general public through the mail. Yet, the Court did not prescribe a totally unfettered, privileged mail. Id. at 824, 94 S.Ct. at 2805. Rather, it was talking about mail which could be censored in accordance with its earlier opinion in Procunier. Id.
 
 
 24
 Here, we are faced with a situation similar to that in Pell. Since we earlier held that the Department's regulations were constitutional insofar as they dealt with nonprivileged mail to the general public (allowing censorship only when a letter's content poses a threat to prison security), there is no reason why mail communication to the media must be given a special status. The inmates have alternative avenues for reaching the general public. As the Court stated, "[s]o long as reasonable and effective means of communication remain open and no discrimination in terms of content is involved, we believe that, in drawing such lines, 'prison officials must be accorded latitude.' " Id. at 826, 94 S.Ct. at 2806 (quoting Cruz v. Beto, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972)).
 
 
 25
 We also hold that prisoners have no interest in having the media serve as an alternate means for petitioning the government. We first note that Illinois prison inmates have "substantial opportunities to petition the executive, legislative, and judicial branches of government directly." Pell, 417 U.S. at 828 n. 6, 94 S.Ct. at 2807 n. 6. Indeed, these direct communications are treated as privileged and, therefore, constitute an unimpeded means by which prison inmates may petition the government. Moreover, even if inmates were to choose an alternate avenue via the media, the Department's regulations treat media mail exactly as they treat all other non-privileged mail. Thus, prison officials may not censor it unless it contains information which threatens jail security.[8]
 
 
 26
 Accordingly, the district court did not err by upholding that portion of the Department's regulations which denied privileged status to media communications. In view of the alternate avenues of communication which are available to an inmate, the media is not essential for communicating with the general public or petitioning the government for redress of grievances. Therefore, the first amendment requires only that media mail be treated like all other non-privileged mail.[9]
 
 Mailings at State Expense
 
 27
 Finally, the appellants claim that Rules 525.130(a) and (b), which govern state-paid mail, are unconstitutionally vague and deny them access to the courts. These regulations establish a scheme whereby all inmates are entitled to send three first class letters per week at state expense, and may send an unlimited number of additional letters with postage costs deducted from the inmates' trust accounts. Additionally, inmates without sufficient funds in their trust accounts are allowed to send "reasonable" additional amounts of "legal" mail at state expense.
 
 
 28
 "It is indisputable that indigent inmates must be provided at state expense" with the basic material necessary to draft legal documents and with stamps to mail them. Bounds v. Smith, 430 U.S. 817, 824, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977). However, although prisoners have a right of access to the courts, they do not have a right to unlimited free postage. See Bach v. Coughlin, 508 F.2d 303, 307 (7th Cir.1974).[10] Prison authorities are able to make "a reasonable attempt to balance the right of prisoners to use the mails with prison budgetary considerations." Id. at 307-08.
 
 
 29
 Here, the district courts properly determined that, as a matter of law, the Department's regulations were constitutional. The regulations set forth a minimum number of privileged or non-privileged letters which may be sent at state expense. This provision is supplemented by a "safety valve" provision which permits the additional expenditure of state funds for legal mail when such an expenditure is reasonable. We cannot say that, on its face, this regulation amounts to an unconstitutional impediment on an inmate's access to courts. Nor do we believe that the terms "reasonable" and "legal" are, as used in the context of this regulation, necessarily vague in the constitutional sense. These terms are certainly susceptible to constitutional--indeed salutary--application. Should prison officials abuse these regulations by interpreting them in such a way as to block a prisoner's legitimate access to the courts, the prisoner is not without remedy.
 
 III. CONCLUSION
 
 30
 In both actions the district courts were correct in dismissing the complaints for failure to state a claim. The Department's mail regulations are comfortably within the parameters established by the Supreme Court and lower federal courts for the processing of privileged and non-privileged mail. No matter what set of facts the appellants could proffer, these regulations--taken on their face --are not constitutionally infirm.
 
 
 31
 Accordingly, the judgments of the district courts[11] are affirmed.
 
 
 32
 AFFIRMED.
 
 
 
 *
 This opinion has been circulated among all judges of this court in regular active service under Circuit Rule 16. No judge voted to rehear this case en banc regarding the conflict with Guajardo v. Estelle, 580 F.2d 748 (5th Cir.1978)
 
 
 [1]
 In case No. 85-1745, Count II of the complaint alleged that the prison mail regulations were unconstitutional as applied to the appellants. As such, Count II differed from Count I which only presented a facial challenge to the regulations. Count II survived the appellees' motion to dismiss; however, the appellants voluntarily dismissed it without prejudice presumably so that this appeal could be brought. Count II constitutes no part of this appeal
 
 
 [2]
 Rule 525.140(g), the provision dealing with incoming mail, does not specifically limit its application to non-privileged mail. In fact, by its terms, the rule applies to all "[i]ncoming mail." Yet, it is clear from the regulation's context, and as a matter of statutory interpretation, that Rule 525.140(g) is only to be applied to non-privileged mail. This reading makes subsection (g) consistent with the restrictions found in subsection (b)
 Rule 525.140(g) also allows mail to be censored, inspected, reproduced, or withheld if it is obscene. However, no serious challenge has been brought concerning this portion of the rule; therefore, we do not consider it to be material to our discussion.
 
 
 [3]
 The appellants' claim that this list is illustrative only and, therefore, improperly gives the Department unfettered discretion to determine which items will be censored. This regulation must, however, be read as a totality. All censorship must be justified in terms of whether the correspondence "presents a threat to security or safety...." Certainly, this regulation gives as much guidance to prison officials as the one cited with approval in Procunier v. Martinez, 416 U.S. 396, 414 n. 14, 94 S.Ct. 1800 n. 14, 1812 n. 14, 40 L.Ed.2d 224 (1974)
 
 
 [4]
 Appellant Gaines charges that of the nine examples, the sixth is unconstitutional since it prohibits an inmate's letters which "solicit[ ] gifts, goods or money from other than family members." This provision is constitutionally unobjectionable. If, under the rule established in Bell v. Wolfish, 441 U.S. 520, 553-55, 99 S.Ct. 1861, 1881-82, 60 L.Ed.2d 447 (1979), a prison can totally exclude all packages in the interest of security, the prison must also have the ability to solve the problem before it starts by preventing the solicitation of packages. The same concerns are present with respect to the solicitation of money. See Sell v. Parratt, 548 F.2d 753, 756 (8th Cir.), cert. denied, 434 U.S. 873, 98 S.Ct. 220, 54 L.Ed.2d 152 (1977)
 The appellants also claim that the regulations are deficient because they do not specifically identify which prison employees may read the mail. This feature does not amount to "vagueness" in the constitutional sense. The regulations are, on their face, permissible. Failure to designate a particular employee does not unnecessarily infringe on the first amendment rights of prisoners.
 
 
 [5]
 The appellants do not seriously contend that these remedies are unavailable. Accordingly, we hold that the district court properly dismissed the due process claims for failure to state a claim
 These remedies could be invoked, for instance, if a prison employee abused his authority and censored a letter not because it posed a threat to security but because its contents were at odds with his "own personal prejudices and opinions." Procunier, 416 U.S. at 415, 94 S.Ct. at 1812.
 
 
 [6]
 The prisoners here assert, as they must, their own rights to communicate with the media. We are not confronted with any specific complaint by the media with respect to its own right of access to the prisoners. In any event, the Supreme Court has held that the "First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." Branzburg v. Hayes, 408 U.S. 665, 684, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); see Houchins v. KQED, Inc., 438 U.S. 1, 9, 98 S.Ct. 2588, 2593, 57 L.Ed.2d 553 (1978); Pell v. Procunier, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974)
 To the extent that the right to speak necessarily includes the listener's right to receive the message, cf. Bigelow v. Virginia, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975), this concern is satisfied by the opportunity of the prisoner to communicate with the general public through alternate channels of communication.
 
 
 [7]
 The fourteen categories of privileged mail include letters to:
 a) The Director;
 b) The Deputy Director of the appropriate division;
 c) Members of the Office of Advocacy Services;
 d) Members of the Administrative Review Board;
 e) Members of the Prisoner Review Board;
 f) The Governor;
 g) The Attorney General;
 h) Federal, Illinois or local Illinois legislators;
 i) Chief Executive Officers of federal, state or local law enforcement agencies;
 j) The Federal Bureau of Prisons;
 k) The U.S. Department of Justice;
 l) Registered Attorneys;
 m) Judges, magistrates or clerks of any court; and
 n) Legal aid organizations.
 Rule 525.110.
 
 
 [8]
 We have already noted that we do not have before us an "as applied" situation where there is a specific allegation that the censored communication does not reasonably come within one of the areas where prison officials may legitimately censor communications. See supra note 1; see also Procunier, 416 U.S. at 415, 94 S.Ct. at 1812
 
 
 [9]
 We realize that the Fifth Circuit has adopted a different position on this issue. In Guajardo v. Estelle, 580 F.2d 748, 759 (5th Cir.1978), a panel of that court held that the prisoner plaintiffs in that case had "a right to send media mail unopened and to receive media mail that had been opened only for the inspection of contraband in the inmate's presence."
 We respectfully suggest that Guajardo is based on an erroneous reading of Pell. The Fifth Circuit grounded its decision on the belief that the Supreme Court's denial of face-to-face interviews between the media and prisoners was based on the existence of an unrestricted right of correspondence with the media. In short, the Fifth Circuit assumed that Pell requires some unrestricted communication between the media and the prisoner.
 In our view, Pell contains no such requirement. Rather, the Court assessed the prohibition of media interviews against the entire panoply of methods by which the prisoner could communicate with the general public. Id. at 823-25, 94 S.Ct. at 2804-05. Neither Pell nor the cases following it established a special right of the prisoner to communicate with the media.
 
 
 [10]
 In Bach v. Coughlin, 508 F.2d 303 (7th Cir.1974), this court approved Regulation 823, the precursor of the current Department rule. Id. at 308. Other courts have authorized more stringent provisions. See, e.g., Hoppins v. Wallace, 751 F.2d 1161 (11th Cir.1985) (furnishing two free stamps a week to indigent prisoners is adequate to allow exercise of the right to access to the courts)
 
 
 [11]
 The magistrate erred in not ruling on appellant Dickey Gaines' request for appointment of counsel. It is clear in this circuit that a "trial court must rule on a request for appointed counsel before ruling on a summary judgment motion or a motion to dismiss." Brown-Bey v. United States, 720 F.2d 467, 471 (7th Cir.1983). However, contrary to the appellant's request, we see no reason to remand this case. The magistrate's error was clearly harmless. Although appellant Gaines had no counsel, similar arguments were presented--with the assistance of counsel--in the companion case which was consolidated for appeal in this court. Since we have rejected the merits of the appeals in both actions, we are persuaded that appellant Gaines' claim would have been entirely without merit even if he had been given the assistance of counsel