**Gary L. FAULKNER, Plaintiff,**

v.

**Richard McLOCKLIN, Defendant.**

No. S88-588.

United States District Court,
N.D. Indiana,
South Bend Division.

Oct. 30, 1989.

As Amended Dec. 15, 1989.

Earl I. Studtmann, Portage, Ind., for plaintiff.

F.E. Rakestraw, Rochester, Ind., for defendant.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause poses a difficult issue concerning a jail inmate's right to be present when his legal mail is opened to check for contraband. During plaintiff Gary L. Faulkner's nine months as a pretrial detainee in the county jail in Fulton County, Indiana in 1988, jail officials opened, outside his presence, certain letters addressed to him. He brings this suit pursuant to 42 U.S.C. § 1983, seeking an award of damages from Fulton County Sheriff Richard McLocklin. The court has jurisdiction over the claim pursuant to 28 U.S.C. § 1343. The case was tried to the court on October 26, 1989, without intervention of a jury. This memorandum is intended to satisfy the court's obligations under Rule 52(a), Fed.R.Civ.P.

Mr. Faulkner was arrested in Fulton County on March 27, 1988, and charged with attempted burglary and with being an habitual offender. He resided in the county jail until December 15, 1988. He elected to represent himself in his criminal case, and in the course of doing so became an avid letter writer. Jail records indicate that he sent 485 pieces of mail during his stay, and received 237 pieces of mail. Forty to fifty pieces of the incoming mail might have been considered "legal mail" under one definition or another. Mr. Faulkner testified that jail officials opened all of his mail before delivering it to him. He contends that this deprived him of his right to have legal mail opened in his presence.

The court did not find Mr. Faulkner to be a credible witness. To say that he exaggerated on several points charitably understates the situation.[1] Accordingly, the court attributes no weight to Mr. Faulkner's testimony to the extent it was contradicted by other testimony or evidence. His testimony that all forty to fifty pieces of

---

1. For example:
  1. Mr. Faulkner testified that jail officials held up his outgoing mail, and gave as an example an alleged five-day delay in mailing his complaint in this case; yet Mr. Faulkner's petition to proceed *in forma pauperis*, on file in this case, indicates that he signed it on September 17 and the file stamp indicates that the clerk's office received it on September 21. Fulton County Jail personnel go to the post office on Monday through Friday, and September 17, 1988 was a Saturday.
  2. Mr. Faulkner stated that he twice had arranged to post bond on the state criminal charges, but jail personnel somehow arranged with the judge to increase his bond each time. On further questioning, Mr. Faulkner conceded that he also was being held on a federal detainer, but testified that his parole officer would have released him on that. On still further questioning, Mr. Faulkner admitted that he also was being held on an Ohio detainer.
  3. Mr. Faulkner misstated the circumstances under which he was arrested.
Other examples are described in the text of this memorandum where pertinent.

"legal mail" were opened outside his presence was contradicted, and the court rejects Mr. Faulkner's testimony on that point.

Mr. Faulkner presented twelve pieces of what claims to have been legal mail that was opened outside his presence. He maintains that the remaining pieces of legal mail were removed from his cell during a two or three day period in which he was relocated to another county jail. The court finds that testimony incredible. First, Jail Commander Robert Bryant, whom the court found to be a credible witness, testified that Mr. Faulkner took boxes of correspondence with him when he left the county jail in December. Second, and more importantly, the dates of the cell search and the letters in question belie Mr. Faulkner's testimony. Jail officials received information that Mr. Faulkner had a homemade knife and was planning an escape during a weekend in May. They placed him in another county jail and searched his cell. The search disclosed what appeared to be a homemade knife. Mr. Faulkner claims jail officials took letters that were received in envelopes introduced into evidence as Plaintiff's Exhibits 4 and 5, which bear postmarks of June 10, 1988 and August 31, 1988. Both envelopes post-date the search; their contents could not have been seized in May. The court does not find that jail officials took Mr. Faulkner's correspondence.

Mr. Faulkner testified that the twelve letters introduced into evidence all were opened outside his presence. Again, that testimony was rebutted. Officer Bryant testified that he slits open incoming inmate mail across the top of the envelope with a pocket knife or letter opener. Nine of these twelve exhibits were opened along one side or another of the envelope, in most instances leaving jagged tears. Particularly in light of Mr. Faulkner's lack of credi-

bility, the court credits Officer Bryant's testimony that he opened only three of the letters before delivering them to Mr. Faulkner.

Resolution of the credibility issues does not, however, resolve the case. Officer Bryant conceded that he opened three of the letters outside Mr. Faulkner's presence. The court must determine whether those letters were "legal mail" and, if so, whether Sheriff McLocklin is liable to Mr. Faulkner as a result of the letters having been opened outside Mr. Faulkner's presence.[2]

The first of the three letters in question arrived in a hand-addressed envelope postmarked May 13, 1988. The return address had been placed by a rubber stamp, and read:

CALUMET CHAPTER

INDIANA CIVIL LIBERTIES UNION

P.O. Box 2846

Gary, Indiana 46403

Officer Bryant opened that letter to check for contraband, but did not read the letter, before delivering it to Mr. Faulkner. Mr. Faulkner objected to that letter having been opened, and explained that the Indiana Civil Liberties Union ("I.C.L.U.") was his legal counsel. Accordingly, Mr. Bryant did not open Plaintiff's Exhibits 4 and 5, which bore typed addresses and printed return addresses bearing the logo of the American Civil Liberties Union ("A.C.L.U."), Calumet Chapter, I.C.L.U. Officer Bryant also did not open Plaintiff's Exhibit 6 (post-marked September 26, 1988), which was hand-addressed to Mr. Faulkner, but bore the printed return address of the A.C.L.U. in Indianapolis and was stamped "LEGAL MAIL". Officer Bryant did not open Plaintiff's Exhibit 7 (post-marked November 8, 1988), which bore a typed address to Mr. Faulkner, a

**2.** Sheriff McLocklin does not contend that he was not personally responsible for the acts of which Mr. Faulkner complains (or more accurately in light of the court's credibility determinations, for the acts the defense concedes). Sheriff McLocklin wrote the policy under which Officer Bryant acted, and (with the exception of

a letter under a U.S. Senator's frank) it appears that the mail was handled consistently with Sheriff McLocklin's interpretation of that policy. Accordingly, if the opening of the letters violated Mr. Faulkner's constitutional rights, Sheriff McLocklin would be liable. *Rascon v. Hardiman,* 803 F.2d 269, 274–275 (7th Cir.1986).

notation of *"LEGAL MAIL"* and the printed return address of the Notre Dame Law School, above which was typed, "LEGAL AID: Sharon Gould". Each of those envelopes was presented unopened to Mr. Faulkner; they were not opened even in Mr. Faulkner's presence.

Officer Bryant did, however, open Plaintiff's Exhibit 8, which was post-marked November 15, 1988. That envelope bore a hand-written address to Mr. Faulkner, and a handwritten notation, *"LEGAL MATERIALS"*. The envelope bore the printed return address of the Legal Services Program of Northern Indiana, Inc., of Lafayette, Indiana, above which the name "John Willis" was typed. Officer Bryant testified that he opened the letter because of the handwriting on the envelope and because Mr. Faulkner had placed several telephone calls to Mr. Willis at an "800" number without identifying Mr. Willis as an attorney.

The other envelope Officer Bryant opened was Plaintiff's Exhibit 3, a franked letter (bearing no postmark) from the United States Senate Committee on Agriculture, Nutrition, and Forestry in Washington, D.C. The return address bore the notation, "OFFICIAL BUSINESS". The envelope was franked under the signature of Senator Richard Lugar.

The United States Supreme Court has never specifically held that an inmate has a constitutional right to attend the opening of his legal mail. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), is frequently cited in support of the existence of such a right, *see, e.g., Jensen v. Klecker*, 648 F.2d 1179, 1182 (8th Cir. 1981), but it does not so hold. In *Wolff*, the inmate contended that to allow prison authorities to open his mail in his presence violated several of his constitutional rights, and the Court disagreed. The Court stated that "the petitioners, by acceding to a rule whereby the inmate is present when mail from attorneys is inspected, have done all, and perhaps even more, than the Constitution requires." 418 U.S. at 539, 94 S.Ct. at 2963. The suggestion that allowing the inmate's presence may provide greater protection than that required by the constitution falls well short of holding that the inmate has a right to be present.

Four months before *Wolff*, however, the Seventh Circuit squarely held that inmates have a right to be present when mail from attorneys is opened for inspection. In *Bach v. Illinois*, 504 F.2d 1100, 1102 (7th Cir.), *cert. denied* 418 U.S. 910, 94 S.Ct. 3202, 41 L.Ed.2d 1156 (1974), the court wrote,

> An inmate's need for confidentiality in his communications with attorneys through whom he is attempting to redress his grievances is particularly important. We think that contact with an attorney and the opportunity to communicate privately is a vital ingredient to the effective assistance of counsel and access to the courts. *Adams v. Carlson*, 488 F.2d 619 (7th Cir.1973). The potential for diluting privacy in communication between attorney and client is particulary acute in the facts before us. The prison officials in inspecting incoming mail outside the presence of an inmate are provided with an opportunity to obtain advanced warning of potential litigation which might involve the prison and more significantly could become privy to stratagems being formulated between attorney and client with regard to pending litigation. Therefore, we hold that plaintiff is entitled to be present during the opening of legal mail addressed to him in prison. *Smith v. Robbins*, 454 F.2d 696 (1st Cir.1972).

A pretrial detainee has no lesser rights in this regard than do inmates who have been convicted. *Martin v. Tyson*, 845 F.2d 1451, 1456–1457 (7th Cir.), *cert. denied* —— U.S. ——, 109 S.Ct. 162, 102 L.Ed.2d 133 (1988).

Sheriff McLocklin argues that letters from a Legal Services Program or a chapter of the A.C.L.U. cannot be considered "legal mail", because they are not from attorneys. The court cannot agree that "legal mail" is subject to so stingy a defini-

tion.[3] Such organizations exist to provide legal services to (at least some of) those who request legal services, and employ attorneys for that purpose. That the organizations themselves are not licensed to practice law and employ persons who are not licensed to practice law does not set them apart from law firms. An inmate who writes the A.C.L.U. or one of its chapters generally does so in the hope of receiving legal representation or advice, and is likely to describe his legal problem in the course of doing so; the response is likely to refer to the problem described, giving rise to the dangers discussed by the *Bach* court.

A letter from the A.C.L.U. was deemed not to be legal mail in *Jensen v. Klecker,* 648 F.2d 1179, 1182–1183 (8th Cir.1981), but that letter bore no identification as legal mail and was addressed to "President, Wallstreet Jaycees" rather than to the inmate by name. Plaintiff's Exhibit 2, while not marked "Legal Mail", was addressed to Mr. Faulkner personally, and Plaintiff's Exhibit 8, was addressed to Mr. Faulkner personally and was marked "LEGAL MATERIALS". Even in *Jensen,* the court held that "a letter from the National Prison Project, bearing the name of an attorney and which was stamped 'Lawyer Mail—Do Not Open Except in Presence of Prisoner' and which was addressed to plaintiff Jensen appears to come well within the definition of attorney-client mail." 648 F.2d at 1183.

Sheriff McLocklin has offered no convincing reason why mail from the A.C.L.U. or a legal services program should be treated differently from mail from a law firm. The court concludes, contrary to the sheriff's contention, that such mail may constitute "legal mail" that may be opened only in the inmate's presence.

Although the Seventh Circuit does not appear to have addressed the issue of inmate mail from elected officials or government agencies, it seems to be settled that such mail is entitled to the same protection as mail from attorneys. *Taylor v. Sterrett,* 532 F.2d 462, 478–481 (5th Cir. 1976). Attorney mail touches upon the Sixth Amendment right to counsel in criminal proceedings and the First Amendment right to access to courts; mail from elected officials and government agencies touches upon the inmate's First Amendment right to petition the government for redress of grievances.

Thus, the court concludes that the three exhibits were eligible for protection as "legal mail".

Under certain circumstances, the opening of "legal mail" outside an inmate's presence does not give rise to liability. Jails and prisons may place reasonable restrictions upon the right to assure that only true "legal mail" triggers the right to be present when the envelope is checked for contraband. *Wolff* itself recognized the permissibility of such restrictions:

> We think it entirely appropriate that the State require any such communications to be specifically marked as originating from an attorney, with his name and address being given, if they are to receive special treatment. It would also certainly be permissible that prison authorities require that a lawyer desiring to correspond with a prisoner, *first* identify himself and his client to the prison officials, to assure that the letters marked privileged are actually from members of the bar.

418 U.S. at 576–577, 94 S.Ct. at 2984–2985. The Fifth Circuit recognized the permissibility of another form of restriction in *Taylor v. Sterrett,* 532 F.2d at 475 n. 20:

---

**3.** Neither *Gaines v. Lane,* 790 F.2d 1299 (7th Cir.1986), nor *Averhart v. Shuler,* 652 F.Supp. 1504 (N.D.Ind.), *aff'd* 834 F.2d 173 (7th Cir. 1987) (table), *cert. denied* 484 U.S. 1073, 108 S.Ct. 1045, 98 L.Ed.2d 1008 (1988), provide a definition of "legal mail" for constitutional purposes. The *Gaines* court evaluated regulations of the Illinois Department of Corrections and concluded that those regulations did not in-

fringe the inmates' rights. *Averhart* was decided against the backdrop of Indiana's statutory provisions concerning the opening of inmate mail. Accordingly, the court looks to *Bach v. Illinois,* 504 F.2d 1100, and *Taylor v. Sterrett,* 532 F.2d 462 (5th Cir.1976), for the principles by which to determine whether a mailing constitutes "legal mail".

Consistent with the Supreme Court's discussion in *Wolff* ... we think it permissible that prison officials require attorneys wishing to correspond confidentially with prisoners first to identify themselves by means of a signed letter. The procedure ordered by the court in *Marsh v. Moore*, 325 F.Supp. [392] at 395 [(D.C.Mass.1971)], is one approach to this problem. There, any attorney wishing to correspond with an inmate was required to enclose confidential writings in a sealed envelope to be mailed to the prison inside a larger envelope containing a signed cover letter.

In *Harrod v. Halford*, 773 F.2d 234 (8th Cir.1985), *cert. denied* 476 U.S. 1143, 106 S.Ct. 2254, 90 L.Ed.2d 699 (1986), the court found that a prison regulation did not infringe an inmate's constitutional rights when it required that letters be marked as "confidential" or "attorney/client communication" for the inmate to be present at the opening, even if the letters clearly were from a legal source.

The ambiguities on the two attorney letters to Mr. Faulkner may have been such that jail officials could have opened them outside Mr. Faulkner's presence had they adopted a regulation such as those discussed in *Wolff, Taylor v. Sterrett* and *Harrod v. Halford.* For example, Plaintiff's Exhibit 2 (the letter from the Calumet Chapter of the I.C.L.U.) bears no legend of "Legal Mail" or "Attorney–Client Communication", and neither Mr. Faulkner or the I.C.L.U. had informed jail personnel before the letter arrived that privileged communications were anticipated. After the letter had been opened and forwarded to the addressee, Mr. Faulkner told Officer Bryant that he considered the I.C.L.U. to be his counsel, and Officer Bryant began delivering Civil Liberties Union correspondence to Mr. Faulkner unopened.[4]

Although Plaintiff's Exhibit 8 bore the legend, "LEGAL MATERIALS", identified the name of the sender as Joe Willis, and was sent in a Legal Services Organization envelope, the envelope was hand-addressed and Mr. Willis's name was handwritten. Neither Mr. Faulkner nor Mr. Willis had informed Sheriff McLocklin or Officer Bryant that Mr. Faulkner anticipated receiving legal advice from Mr. Willis. Officer Bryant was aware that Mr. Faulkner had spoken to Mr. Willis several times on the telephone, via an "800" number, and Mr. Faulkner had not identified Mr. Willis as an attorney on those occasions.

█ Accordingly, had the Fulton County Jail adopted requirements such as those other courts have mentioned with approval, it may have been permissible to open Exhibits 2 and 8 and check them for contraband outside Mr. Faulkner's presence. The Fulton County Jail, however, has adopted no policy or procedure concerning the marking of legal mail. Attorneys and inmates cannot reasonably be required to comply with procedures that have not been adopted. Exhibits 2 and 8 were letters sent to Mr. Faulkner from attorneys, and bore designations sufficient, absent specific requirements articulated by the jail, to alert jail personnel to their privileged nature.

Exhibit 2, the letter from a U.S. Senate committee, was sent under Senator Lugar's frank and bore a designation printed in the return address as "Official Business". Even had a jail regulation required more, the regulation's permissibility might be questionable. See *Martin v. Brewer*, 830 F.2d 76 (7th Cir.1987) (requirement that "special mail" be designated by a specifically-worded legend on the envelope held permissible with respect to attorney correspondence but questioned with respect to correspondence from government officials and agencies).

The court cannot accept Sheriff McLocklin's argument that *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), precludes a finding of liability. The *Daniels* Court held that negligent conduct causing a deprivation of life, liberty or

---

**4.** During a September, 1988 deposition of Sheriff McLocklin that Mr. Faulkner conducted in his state criminal proceeding, Mr. Faulkner appears to have informed the sheriff that he considered the A.C.L.U. to have been his counsel. Thereafter, no letters from the A.C.L.U. or the I.C.L.U. were opened before delivery to Mr. Faulkner.

property cannot give rise to a due process claim under 42 U.S.C. § 1983. Sheriff McLocklin must overcome two hurdles to avail himself of the rule in *Daniels*. First, the constitutional violation at issue must be one of due process, rather than a specific right provided by the Constitution, and second, the court must find the conduct to have been negligent. It is colorable that the right to be present during the opening of mail is only a procedural safeguard for First and Sixth Amendment rights, and thus subject to *Daniels*, see *Averhart v. Shuler*, 652 F.Supp. 1504 (N.D.Ind.), aff'd 834 F.2d 173 (7th Cir.1987) (table), *cert. denied* 484 U.S. 1073, 108 S.Ct. 1045, 98 L.Ed.2d 1008 (1988), but the second hurdle cannot be overcome, at least with respect to the letters from attorneys.[5] Officer Bryant purposely opened the envelopes, believing they were not legal mail. His conduct, although not designed knowingly to deprive Mr. Faulkner of any right, was deliberate and intentional. Mr. Faulkner's due process rights were not violated through negligent conduct.

■ This is an unattractive case for an award of damages to Mr. Faulkner. With respect to the vast majority of Mr. Faulkner's legal mail, Fulton County Jail officials honored Mr. Faulkner's rights more scrupulously than necessary: most of Mr. Faulkner's legal mail was not opened at all to check for contraband.[6] Further, Mr. Faulkner lied to the court concerning the extent to which jail officials opened his legal mail and fabricated a theft of legal mail by jail officials. Finally, Mr. Faulkner suffered no actual damage as a result of the opening of his legal mail outside his presence; the record contains nothing to support a finding that any of his legal mail was read. Mr. Faulkner may not recover damages based on the abstract value or importance of the constitutional right at issue. *Memphis Community School District v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986); *Bailey v. Andrews*, 811 F.2d 366, 376–377 (7th Cir.1987). Nonetheless, existing case law seems to make inescapable the conclusion that Mr. Faulkner's constitutional rights were violated by the opening, outside his presence, of three pieces of legal mail.

Mr. Faulkner's proof entitles him to no more than nominal damages for the violation of his constitutional right. See *Ustrak v. Fairman*, 781 F.2d 573 (7th Cir.), *cert. denied* 479 U.S. 824, 107 S.Ct. 95, 93 L.Ed.2d 47 (1986). If the court had discretion concerning an award of nominal damages, no such award would be entered due to Mr. Faulkner's trial testimony. Such an award does not appear to be discretionary, however. In *Carey v. Piphus*, 435 U.S. 247, 266–267, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978), the Court wrote,

> Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, ... we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury. We therefore hold that if, upon remand, the District Court determines that respondents' suspensions were justified, respondents nevertheless will be entitled to recover damages not to exceed on dollar from petitioners.

(citations and footnotes omitted); *see also Tatum v. Houser*, 642 F.2d 253 (8th Cir. 1981).

Accordingly, the court concludes that Mr. Faulkner is entitled to an award of nominal

---

5. It appears that the letter under Senator Lugar's frank was opened negligently. Sheriff McLocklin and Officer Bryant both testified that jail policy was to deliver unopened letters from government agencies. Officer Bryant simply admitted opening the letter under Senator's frank without stating a reason for having done so. In light of the court's resolution of the damages issue, the opening of this letter makes no difference to the outcome in this case. Accordingly, the court deems it inappropriate to resolve whether the rule of *Daniels* applies to the negligent opening of mail from government agencies outside the inmate's presence.

6. This forbearance is particularly remarkable in light of the discovery of a marijuana cigarette hidden in a pen contained in a letter sent to Mr. Faulkner from a non-existent South Bend, Indiana address.

damages in the sum of one dollar. The clerk is directed to enter judgment in favor of the plaintiff for one dollar and the costs of this action.

SO ORDERED.