1 F.3d 1244
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Mark LARKIN, Plaintiff-Appellant,
v.
James MURPHY, Warden, Defendant-Appellee,
 No. 92-2527.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 30, 1993*
Decided July 19, 1993.
 
 Before MANION and ILANA DIAMOND ROVNER, Circuit Judges, and PELL, Senior Circuit Judge.
 
 ORDER
 
 1
 While incarcerated at the Columbia Correctional Institution in Portage, Wisconsin, Mark Larkin filed this civil action pro se pursuant to 42 U.S.C. Sec. 1983, alleging that the prison mail policy violated his First Amendment right, and that the prison policy denying library access to segregated inmates infringed his Fourteenth Amendment guarantee of equal protection. After allowing the plaintiff three extensions to conduct discovery and to respond to the defendant's motion for summary judgment, the district court granted summary judgment in favor of the defendant.
 
 
 2
 Plaintiff appeals the district court's decision and also asserts that summary judgment was inappropriate because he was denied sufficient time to pursue discovery. With respect to the challenges raised regarding plaintiff's First and Fourteenth Amendment rights, we AFFIRM the district court's decision for the reasons set forth in the attached order. Plaintiff's challenge to summary judgment on grounds that he was not allowed sufficient discovery is also rejected.
 
 I. ANALYSIS
 
 3
 Before granting summary judgment, adequate time for discovery should be afforded to the nonmoving party in order to effectively oppose the motion. See generally Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); A.V. Consultants, Inc. v. Barnes, 978 F.2d 996, 999 (7th Cir.1992). The district court has wide discretion in discovery matters and we will not reverse its decisions limiting the manner or course of discovery absent a clear showing of an abuse of discretion. Ross v. Black & Decker Inc., 977 F.2d 1178, 1185 (7th Cir.1992), cert. denied, 113 S.Ct. 1274 (1993). By granting three extensions for additional discovery, the district court gave plaintiff ample time before requiring a response to the defendant's motion for summary judgment.
 
 
 4
 Plaintiff argues that if given more time and access to prison records, he would have been able to recover a document which noted an increase in vandalism of library materials.[1] He contends that this document contradicts the defendant's affidavit, relied on by the district court in finding that the clippings policy served a legitimate penological interest. Although the document refers to an increase in "mutilation and defacement of books," it does not specifically address magazines or newspapers, and thus does contradict the defendant's affidavit. Likewise, the information sought on the number of cell searches conducted is not relevant or material to dispute that the legitimate goal of facilitating cell searches is served by the mail policy limiting possession of irregular shaped papers. We are therefore, unpersuaded by plaintiff's arguments that the district court abused its discretion in denying further discovery.
 
 
 5
 AFFIRMED.
 
 ATTACHMENT
 
 6
 IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT
 
 OF WISCONSIN
 
 7
 MARK LARKIN, Plaintiff,
 
 
 8
 v.
 
 
 9
 JAMES MURPHY, Defendant.
 
 OPINION and ORDER
 91-C-0861-C
 
 10
 BARBARA B. CRABB, District Judge.
 
 
 11
 This is a civil action for injunctive and monetary relief, brought pursuant to 42 U.S.C. Sec. 1983. Plaintiff, who is confined in segregation at the Columbia Correctional Institution in Portage, Wisconsin, contends that defendant infringed his First Amendment right to receive personal mail by his policy forbidding the receipt of clippings from publications, and that defendant infringed his Fourteenth Amendment guarantee of equal protection by his policy limiting segregated inmates' access to library facilities.
 
 
 12
 The case is before the court on defendant's motion to dismiss the case for lack of subject matter jurisdiction, or for summary judgment. Defendant contends that the purpose of the policies is to regulate the kinds of property that inmates possess and that the policies have a reasonable penological purpose. I conclude that this matter is properly before the court, and that defendant's policies did not violate plaintiff's constitutional rights. Therefore, defendant's motion for summary judgment will be granted.
 
 Subject Matter Jurisdiction
 
 13
 Defendant contends that because neither the mail room policy nor the segregation policy implicates a federal question, this court has no jurisdiction to entertain the matter. Defendant asserts that the policy implicates plaintiff's general property rights, rather than his First Amendment rights. However, in Phillips v. Sawyer, No. 91-C-551-C (W.D.Wis. March 18, 1992), I addressed the constitutionality of the same mail room policy, and found that the policy implicated the First Amendment rights of inmates.
 
 
 14
 28 U.S.C. Sec. 1343 grants this court jurisdiction over claims brought under 42 U.S.C. Sec. 1983 that allege the violation of a constitutional or federal right. Plaintiff's alleged an arguably valid cause of action under 42 U.S.C. Sec. 1983 when he filed his proposed complaint. His claim is properly before the court.
 
 Summary Judgment
 
 15
 To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Indiana Grocery, Inc. v. Super Valu Stores, Inc., 864 F.2d 1409, 1412 (7th Cir.1989). When the moving party succeeds in showing the absence of a genuine issue as to any material fact, the opposing party must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir.1991). Also, if a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the opposing party is proper. Celotex, 477 U.S. at 322.
 
 
 16
 For the sole purpose of deciding the motion for summary judgment, I find from the parties' proposed findings of fact that the following facts are undisputed.
 
 FACTS
 
 17
 Plaintiff Mark Larkin is an inmate incarcerated in the segregation unit at the Columbia Correctional Institution in Portage, Wisconsin. Defendant Murphy was the warden at Columbia at the time these events occurred and was responsible for the implementation of the policy prohibiting inmates from receiving clippings in the mail; he used other staff to enforce the policy.
 
 
 18
 When Columbia opened as a maximum security institution in 1986, inmates were allowed to possess newspaper and magazine clippings. In 1988, the practice was changed so that inmates cannot have newspaper or magazine clippings unless the clippings are related to the inmate's legal case.
 
 
 19
 The impetus for the adoption of the policy prohibiting clippings was the vandalism of newspapers, magazines, books and journals in the Columbia library. Prison staff were unable to determine which clippings in inmates' possession were received from outside the institution and which were from the vandalized periodicals. Altering publications is a violation of Wis.Admin.Code Sec. DOC 303.35, which states in part:
 
 
 20
 (1) Any inmate who intentionally damages, destroys or alters any property of the state or of another person without authorization is guilty of an offense.
 
 
 21
 (2) Any inmate who intentionally damages, destroys or alters his or her own property without the permission of the supervisor of his or her own living unit is guilty of an offense.
 
 
 22
 An additional reason for the policy is that the clippings present a security risk because the irregularly-shaped pieces of paper slow cell searches. Cell searches occur on a random basis, at the rate of approximately four cell searches per day per housing unit. Cell searches may occur for cause also, if there is reason to believe that a particular inmate has contraband in his possession. The searches are necessary to locate contraband, including currency, outdated items, excess items, and weapons. Each inmate's cell is searched approximately once every two weeks. During a cell search, an inmate is removed from his cell and the officer begins the search at a specific point in the cell. He searches the cell thoroughly by looking at each item around the room from his starting point. The officer looks through all paper, books, seams of clothing and bedding, mattresses, the bed, and the walls. Small, irregularly sized pieces of paper such as newspaper or magazine clippings slow the cell searches considerably because each clipping must be examined individually by the officer to ensure that contraband is not clipped to or hidden in the clippings. By contrast, uniform-sized sheets of paper may be stacked, straightened, and flipped through during the search.
 
 
 23
 In order to address Columbia's security concerns and still allow inmates to receive information contained in newspaper and magazine clippings, Columbia allows inmates to possess photocopies of newspaper or magazine articles. Inmates are allowed to possess photocopies of newspaper and magazine clippings; such articles can be distinguished from articles that may have been removed from the Columbia library, and then allow for expeditious cell searches. Columbia has reduced its vandalism problem considerably since it imposed the rule against possession of newspaper and magazine clippings. Security staff are able to determine which inmates have vandalized periodicals because the clippings in their possession are contraband.
 
 
 24
 In September 1990, plaintiff received several notices that certain items of mail would not be delivered to him. The reason provided on the non-delivery form was that the mail contained contraband. The form also indicated that the contraband involved was newspaper clippings and magazine subscription cards. Columbia policy forbids the receipt of these items through the mail.
 
 
 25
 On November 18, 1991, plaintiff filed an inmate complaint regarding the non-delivery of his mail. Inmate complaints are investigated pursuant to Wis.Admin.Code Sec. DOC 310. The complaint investigator makes recommendations of affirmance or dismissal of the complaint to the warden. After reviewing the information in the complaint and the investigator's recommendation, the warden makes a decision on the complaint. Defendant's successor affirmed non-delivery of plaintiff's mail following plaintiff's inmate complaint. Defendant never informed plaintiff that he could possess photocopied newspaper articles.
 
 
 26
 All inmates are permitted to subscribe to periodicals. Those who do subscribe to periodicals and wish to preserve an article must preserve the entire periodical intact. People outside the prison may send in subscription cards on behalf of inmates, which permit the inmate to receive publications.[1]
 
 
 27
 Inmates in segregation are treated differently from inmates in the general population. Inmates in segregation are allowed to possess fewer reading materials than other inmates. They may accumulate only limited quantities of personal, non-legal mail. Additionally, inmates in segregation have more limited library privileges. Segregated inmates may not visit the library, although they may request items for delivery to their cell. With the exception of National Geographic, periodicals do not circulate from the library to any inmates, and so segregated inmates have little or no access to library periodicals.
 
 
 28
 Segregated inmates do not have direct access to the library because Columbia does not have enough guards to provide each inmate in segregated confinement with an individual escort. Segregated inmates must be handcuffed, which puts them at risk from other inmates when they are outside their cells. Finally, library access is a privilege that provides an incentive for inmates to behave properly.
 
 OPINION
 The Mail Policy
 
 29
 Prisoners have a limited liberty interest in their mail under the First and Fourteenth Amendments. Procunier v. Martinez, 416 U.S. 396, 413-14 (1974). The inspection of personal mail for contraband is a legitimate prison practice, justified by the important governmental interest in prison security. Gaines v. Lane, 790 F.2d 1299, 1304 (7th Cir.1986). Further interference with an inmate's personal mail must be reasonably related to legitimate prison interests in security and order. Turner v. Safley, 482 U.S. 78, 89 (1987). In Turner, the Supreme Court identified the following four factors as helpful in determining whether a prison regulation abridging First Amendment rights is reasonably related to a legitimate prison interest: 1) a "valid, rational connection" between the regulation and a legitimate, neutral government interest; 2) the existence of alternative methods for the inmate to exercise his constitutional right; 3) the effect the inmate's assertion of that right will have on the operation of the prison; and 4) the absence of an alternative method to satisfy the government's legitimate interest. Id. at 89-90. Prison regulations related to the sending of publications to prisoners are to be analyzed under these reasonableness standards of Turner. Thornburgh v. Abbott, 490 U.S. 401, 109 S.Ct. 1874, 1879 (1989).
 
 
 30
 A policy that prevents plaintiff from receiving newspaper and magazine clippings through the mail infringes plaintiff's First and Fourteenth Amendment liberty interests. Defendant justifies the infringement by showing that the policy is reasonably related to two legitimate interests in prison security and order. The first interest is to minimize vandalism of periodicals in the prison library; experience has shown that the policy is effective in accomplishing that goal. In addition, cell searches are more efficient when there are fewer pieces of odd-sized papers through which to sift.
 
 
 31
 Plaintiff does not dispute the reasonableness of the goals proffered by defendants in defense of the mail policy. However, plaintiff disputes that the goals of efficiency and respect for prison property are reasonably related to the mail policy.
 
 
 32
 Plaintiff contends that the goal of deterring vandalism is frustrated by inmates' ability to receive newspapers and other periodicals directly from publishers. Plaintiff argues that prison officials are not able to determine which clippings come from inmate subscriptions and which come from library documents. However, inmates who wish to preserve information contained in a newspaper to which they subscribe must keep the entire newspaper intact. Because all clippings (except those relating to a legal matter) are prohibited, the policy goal of deterring vandalism of library documents is furthered.
 
 
 33
 Plaintiff argues further that the policy prohibiting the receipt of subscription cards by mail encourages the vandalism of documents that are available in the library but to which inmates are unable to subscribe. This argument fails to recognize that others outside the prison may send subscription cards on behalf of inmates. Inmates may receive periodicals along with their regular mail and read the periodicals in their cell. Inmates have no need to go to the library for these periodicals, and no incentive to vandalize.
 
 
 34
 Plaintiff contends that because he does not have access to library periodicals while in segregation, he has no occasion to vandalize library documents, and so the policy cannot reasonably apply to him. At least one library periodical does circulate, however, even to inmates in segregation. Additionally, it would send an ironic message to inmates to hold that those inmates in segregation should be subject to fewer restrictions than inmates in the general population. Prison officials imposed segregation as a deterrent to inmate misbehavior; the enhanced punishment is reasonably related to a legitimate penological interest.
 
 
 35
 According to plaintiff, defendant's contention that the mail policy deters vandalism is nothing more than a "conclusory assertion" with no basis in fact. It is true that defendant must sufficiently articulate the governmental interest involved so as to permit meaningful review of the regulation as it affects the plaintiff's asserted rights. Caldwell v. Miller, 790 F.2d 589, 598 (7th Cir.1986). Defendant has sufficiently established the history of vandalism of library documents and the success of the administrative response to it so as to provide this court with a sufficient record of the policy and its relation to a legitimate governmental interest.
 
 
 36
 Plaintiff argues that because defendant did not inform him that he could possess photocopies of newspaper articles, he had no opportunity to exercise his First Amendment right in the alternative method proffered in Turner v. Safley, 482 U.S. 78. However, Turner did not require the availability of such an alternative. Rather, the availability of an alternative is one factor among several that will help determine the validity of a prison regulation. In this case, the fact that plaintiff was not informed of the alternative available is not dispositive of the question whether the policy is reasonably related to a legitimate prison interest.
 
 
 37
 Plaintiff argues that the mail policy slows rather than hastens cell searches. While plaintiff does not offer this as a proposed statement of fact, he alleges in his brief that he has accumulated more paperwork from complaints about the mail policy and administrative responses to those complaints than he would have amassed had the mail been delivered. This allegation does not dispute the fact that the news clippings themselves slow cell searches.
 
 
 38
 Plaintiff argues that the goal of facilitating cell searches is already served by the alternative method of limiting the quantity of personal mail plaintiff may possess. Because both requirements facilitate cell searches is no reason to hold that they may not be implemented together. Additionally, plaintiff himself has an easy alternative method of exercising his constitutional right. He is not prevented from receiving the actual information that is contained in the clippings. Defendant has provided an alternative method for inmates to receive the information that is in the clippings: inmates may receive whole periodicals or eight and one-half by eleven inch copies of the clippings. Defendant's reasons for the policy are reasonably related to prison security and order; the policy does not infringe unconstitutionally on plaintiff's First Amendment rights.
 
 Segregated Confinement
 
 39
 Plaintiff contends that because his library privileges differ from those of inmates in the general population, his rights of equal protection have been violated. However, the equal protection clause applies to persons situated similarly to each other. City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985). Because plaintiff is in segregated confinement, he is not similarly situated to inmates in the general population. Furthermore, "unequal treatment among inmates ... is justified if it bears a rational relation to legitimate penal interests." Williams v. Lane, 851 D.2d 867 (7th Cir.1988) (citing Hudson v. Palmer, 468 U.S. 517, 522-523) (1983)). Defendant's evidence demonstrates that the segregation policy is justified by the limited number of guards at Columbia, by the risk posed to segregated inmates in transit because they are handcuffed, and by the policy's incentive for inmates to behave properly.
 
 
 40
 Because plaintiff has not shown that he is situated similarly to inmates in the general population, and because defendant's policies are reasonably related to a penological purpose, plaintiff's constitutional rights have not been infringed; summary judgment for defendant is appropriate.
 
 ORDER
 
 41
 IT IS ORDERED that defendant' motion for summary judgment is GRANTED. The Clerk of Court is directed to enter judgment for defendant and dismiss this case.
 
 
 42
 Entered this 12th day of June, 1992.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [1]
 To the extent plaintiff argues that the defendant failed to produce this document, we note that it reasonably could be considered to fall outside of plaintiff's document request
 
 
 [1]
 Although he does not propose these allegations as findings of fact, plaintiff alleges in his brief that he could not receive legal clippings or free materials in the mail. Plaintiff provides no evidence that would support these allegations. While plaintiff submits one photocopy of a newspaper clipping that had been confiscated, the article does not pertain to his legal case