**Timothy D. O'KEEFE, Plaintiff,**

**v.**

**Carol MURPHY, et al., Defendants.**

**No. CY–93–3122–AAM.**

United States District Court,
E.D. Washington.

June 2, 1994.

Order Denying Reconsideration
and Granting Motions for Sanctions
Aug. 8, 1994.

Timothy D. O'Keefe, pro se.

Douglas W. Carr, Atty. Gen., Corrections Div., Olympia, WA, for defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

McDONALD, District Judge.

Before the Court is Defendants' Motion for Summary Judgment, **Ct.Rec. 23.** On hearing without oral argument, Plaintiff appeared *pro se.* Defendants were represented by Douglas W. Carr of the Attorney General of Washington, Olympia, Washington. For the reasons set out below, the Court denies defendants' motion and grants summary judgment to plaintiff.

### A. BACKGROUND OF THE ACTION

The parties agree on the following material facts. O'Keefe is a Washington State Penitentiary (WSP) inmate; defendants are administrators of WSP. In early October, 1993, O'Keefe attempted to mail six pieces of his outgoing mail as legal mail. The addresses were "Higher Education Coordinating Board, State of Washington"; "Tana Wood Superintendent, Washington State Penitentiary"; "U.S. Postal Inspection Services, Att. Chief Inspector"; "Willam Gilbert Dept. of Corrections"; "Tana Wood, Super. WSP" and "Employment Security Dept. State of Wash." This mail was sent back to O'Keefe's unit with a notation that the mail did not meet the definition of legal mail in DOP Policy 590.500. O'Keefe accepted the first three pieces of mail and sent them to the Court. O'Keefe refused to accept the other letters; WSP sent them as regular mail.

After filing internal grievances, O'Keefe filed this 42 U.S.C. § 1983 action. O'Keefe alleges that: (1) the six letters were not treated as legal mail; (2) three of the six

letters were opened out of his presence[1]; and (3) some or all of the six letters were retained by WSP for more than eleven business days.[2] O'Keefe contends that this conduct violates the First Amendment (freedom of speech and access to the courts); the Fourth Amendment (freedom from unreasonable search and seizure); the Fifth Amendment (equal protection of law and due process of law); the Fourteenth Amendment (property and liberty interests); and federal criminal statutes.[3] O'Keefe seeks prospective declaratory and injunctive relief.

## B. THE INSTANT MOTION

Defendants seek summary judgment on two grounds. First, they contend that they have qualified immunity from suit: because their conduct does not violate a clearly established constitutional right, O'Keefe cannot prove that no reasonable official would believe such conduct lawful (an essential element to defeat qualified immunity). Alternatively, defendants seek judgment on the merits, contending that their conduct does not violate O'Keefe's constitutional rights.

O'Keefe does not cross-move for summary judgment. However, because the Court interprets a *pro se* litigant's pleadings liberally[4], because the parties already have briefed the merits on defendants' motion for summary judgment and so will not be prejudiced, and because judicial economy will be promoted, the Court *sua sponte* interprets O'Keefe's responsive pleadings as a cross-motion for summary judgment.

1. Defendants contend that they have not opened this mail; O'Keefe contends that they did. This factual dispute is not material to O'Keefe's claims. O'Keefe seeks only a declaration that defendants' policy (of treating this type of mail as regular mail) is constitutionally invalid, not a declaration that the mail was opened. The parties agree that defendants treated this mail as regular mail *subject to* opening; whether it was in fact opened is irrelevant.

2. O'Keefe suggests in his memorandum that further objectionable conduct has occurred, i.e., the withholding of his outgoing poetry-contest submission for 21 days. O'Keefe has not moved to amend his complaint to add this allegation, so

## C. STANDARD FOR SUMMARY JUDGMENT

 A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, this Court must determine if a fair-minded jury could return a verdict for the nonmoving party. *Id.* at 251, 106 S.Ct. at 2512. The party seeking summary judgment must show that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law by "pointing out" to the court that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Id.* at 323, 106 S.Ct. at 2553. The nonmoving party may do this by use of affidavits (including his own), depositions, answers to interrogatories and admissions. *Id.* at 321–25, 106 S.Ct. at 2552–53. (Here, the parties agree on or do not dispute the material facts as described above.) The Court must construe all facts in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

## D. QUALIFIED IMMUNITY

"[G]overnment officials performing discretionary functions[ ] generally are shielded from liability for civil damages [in a section 1983 action] insofar as their conduct does not violate clearly established statutory or consti-

the Court does not consider it. Note, however, that this factual allegation is encompassed by the same legal determination as O'Keefe's claim (3).

3. O'Keefe, a civil litigant, has no standing to prosecute a criminal action. This claim is dismissed.

4. *Morrison v. Jones*, 607 F.2d 1269, 275 (9th Cir.1979), *cert. denied*, 445 U.S. 962, 100 S.Ct. 1648, 64 L.Ed.2d 237 (1980). *See also Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 *reh'g denied*, 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972) (*pro se* complaints are held to a less stringent standard than formal pleadings).

tutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

■ However, claims for injunctive and prospective declaratory relief are unaffected by qualified immunity. *Los Angeles Police Protective League v. Gates,* 995 F.2d 1469, 1472 (9th Cir.1993) (citing other authority).

O'Keefe seeks injunctive and prospective declaratory relief (only). Therefore, qualified immunity cannot shield defendants from this action.

### E. MERITS

O'Keefe contends the following conduct is unconstitutional: 1) the six letters were not treated as legal mail; (2) three of the six letters were opened out of his presence; and (3) some or all of the six letters were retained by WSP for more than eleven business days.

#### E(1). HANDLING O'KEEFE'S SIX LETTERS AS REGULAR MAIL

*Federal Constitutional Right*

■ Prisoners have some federal constitutional right against prison officials' reading their correspondence with their attorneys.[5,6]

However, it is an issue of first impression in this Circuit whether mail between an inmate and non-attorneys—i.e., government agencies and officials—is similarly protected. The Court is informed by the opinion of another district court considering the issue:

> Although the Seventh Circuit does not appear to have addressed the issue of inmate mail from elected officials or government agencies, it seems to be settled that such mail is entitled to the same protection as mail from attorneys. *Taylor v. Sterrett,* 532 F.2d 462, 478–481 (5th Cir.1976). Attorney mail touches upon the Sixth Amendment right to counsel in criminal proceedings and the First Amendment right to access to courts; mail from elected officials and government agencies touches upon the inmate's First Amendment right to petition the government for redress of grievances.

*Faulkner v. McLocklin,* 727 F.Supp. 486, 490 (N.D.Ind.1989).[7]

The Court finds that O'Keefe's outgoing mail, when sent to government agencies or officials as a grievance [8], is protected by his First Amendment right to petition the government for redress of grievances. (O'Keefe has not stated a cognizable claim for violation

---

**5.** The United States Supreme Court has declined to decide from which constitutional amendment—First, Sixth or Fourteenth—this right arises. *Wolff v. McDonnell,* 418 U.S. 539, 575–76, 94 S.Ct. 2963, 2984–85, 41 L.Ed.2d 935 (1974). The Ninth Circuit has suggested in *dicta* that the right arises from "the prisoner's privacy rights and the attorney-client privilege." *Stevenson v. Koskey,* 877 F.2d 1435, 1443 n. 2 (9th Cir.1989) (Reinhardt, J., dissenting) (citing *Taylor v. Sterrett,* 532 F.2d 462, 475 (5th Cir.1976)).

**6.** Prison officials constitutionally may inspect incoming mail from attorneys for contraband in the prisoner's presence (providing they do not read the mail). *Wolff,* 418 U.S. at 577, 94 S.Ct. at 2985 ("petitioners [prison officials], by acceding to [this procedure] ..., have done all, and perhaps even more, than the Constitution requires."). It is unsettled in this Circuit whether a prisoner's presence is *required* during inspection of incoming mail from his attorney. *Sherman v. MacDougall,* 656 F.2d 527, 528 (9th Cir. 1981). However, defendants' rules comply with *Wolff:* although regular mail may be opened and read, "legal mail" (both incoming and outgoing) may not be read, and may be opened and in-

spected only in the defendant's presence. DOP Policy 450.100(VI)(A)(5), (VI)(B)(3).

**7.** *Faulkner,* like the few other cases considering whether grievance mail is legal mail, considered only *incoming* mail. *See, United States v. Stotts,* 925 F.2d 83 (4th Cir.1991) (prison officials may restrict incoming legal mail by requiring that mail be marked with the sender's name and the fact that he is an attorney); *Harrod v. Halford,* 773 F.2d 234 (8th Cir.1985), *cert. denied,* 476 U.S. 1143, 106 S.Ct. 2254, 90 L.Ed.2d 699 (1986) (prison officials may restrict incoming legal mail by requiring that mail be marked "confidential" or "attorney/client privilege"); *Ramos v. Lamm,* 639 F.2d 559, 582 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981) (including government agency mail in description of legal mail); *Guajardo v. Estelle,* 580 F.2d 748, 759 (5th Cir.1978) (same). Because the relevant right here is the *prisoner's* right to petition *outside* officials, the right attaches at least, if not also, to outgoing mail.

**8.** I.e., "grievance mail." Note that the grievance need not be related to his incarceration. *Ramos,* 639 F.2d at 582.

of his Fourth, Fifth or Fourteenth Amendment rights in such mail.) To permit prison officials to read prisoners' "grievance mail" would cause the same chilling of meritorious petitions as with officials' reading mail to attorneys or courts.

However, just as prison officials may open and inspect prisoner-attorney mail in the prisoner's presence, grievance mail may be opened and inspected in his presence. Chilling is unlikely where a prisoner is present to ensure that his thoughts remain private, despite inspection of their physical, epistolary contours. Similarly, prison officials may inspect grievance mail noninvasively, regardless of the prisoner's presence; the prisoner's right to petition is unaffected where his petition remains sealed.

■ *Constitutionality of Regulation Affecting Right.* The Court first examines whether defendants' policy of treating grievance mail as regular mail (e.g., subject to opening and reading) is valid. Because the Court must then fashion injunction and/or declaratory relief, the Court secondarily examines whether O'Keefe's proposed regulation of treating grievance mail as legal mail (e.g., subject to inspection) is valid.

"When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987) (citing *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987)). Consideration of several factors determines whether a regulation is reasonable. "First, there must be a 'valid, rational connection' between a prison regulation and the legitimate governmental interest put forward to justify it." *Turner,* 482 U.S. at 89, 107 S.Ct. at 2262 (citation omitted). Second, there must be alternative means of exercising the right that remain open to prison inmates. *Id.* at 90, 107 S.Ct. at 2262. Third, the Court considers "the impact accommodation of the assert-

ed constitutional right will have on guards and other inmates and on the allocation of prison resources generally." *Id.* "Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." *Id.* (citation omitted) (also acknowledging that few changes would have no effect on the use of a prison's "limited resources for preserving institutional order" and that thus "courts should be particularly deferential to the informed discretion of corrections officials").

*Rational relation of policy to government interests.* The legitimate government interests involved are prison security (preventing prison escape plans) and public security (preventing mail fraud on outside businesses and individuals, ensuring that prisoners have adequate funds to pay for any purchases by mail, and restricting the kinds of goods and services purchased from the prison). There is a rational connection between these interests and the reading of mail between the prisoner and the public. Government agencies, however, have a superior ability to control mail addressed *to* them, and it is nearly incomprehensible that mail *from* government agencies would be the source of prison escape plans and the like. *See also, Guajardo v. Estelle,* 580 F.2d 748, 759 (5th Cir.1978) ("[W]e are unwilling to believe that the courts and agencies will not control mail addressed to them. The greatest single danger in that respect [is] that agencies would be requested to forward mail ..."). The rational connection between prison or public security interests, and the reading of grievance mail, is tenuous at best.[9]

On the other hand, there is a rational relation between prison or public security interests, and the *inspection* of grievance mail. The security interests here involve preventing letter bombs and physical contraband, both incoming and outgoing. Govern-

---

**9.** The Court notes that a prisoner conceivably could create a mail ruse, by having an outside confederate send him mail that appears to be from a government agency (in response to the prisoner's grievance). The Court reserves on the question of whether prison officials constitutionally may open or read mail that appears to be incoming (responsive) grievance mail, but which the officials reasonably suspect is not.

ment agencies may be able to discard easily *words* that cajole or threaten an illegality, but physical threats are not easily ignored.

*Alternative means for prisoner to pursue right.* O'Keefe lacks alternative means of exercising his right to petition the government. As he is incarcerated, mail is his only method of petition.

*Impact of the unrestricted right on the prison.* Defendants' restraint from reading grievance mail, if they are still permitted to inspect the mail, will increase slightly the administrative cost of processing prisoner mail. Rather than immediately reading suspect mail, mail personnel could retrieve the prisoner and inspect the mail in his presence, or visit the prisoner and inspect the mail in his cell. This is not a great burden.[10]

Defendants' restraint from *inspecting* grievance mail will increase greatly the administrative cost of processing prisoner mail. In order to pursue their security interests, defendants might opt for non-invasive investigatory techniques: trained dogs, x-ray machines and the like.[11] This would prove substantially more expensive than human inspection after opening grievance mail.

*Alternative means for prison to pursue government interests.* The final factor presents the crux of this determination. Alternative means to reading grievance mail exists.

Defendants could use non-invasive investigatory techniques outside of the presence of the prisoner, although as discussed above this would prove expensive. They could require grievance mail to be marked "GRIEVANCE" or to be addressed to an administrative complaint department, thereby lessening the amount of true grievance mail and so lessening their expense to process suspect grievance mail. Finally, defendants could merely inspect grievance mail in the prisoner's presence; as discussed above, that meets their security interests as well as does reading the mail.

*Conclusion.* DOP policy of reading grievance mail unconstitutionally impinges on prisoners' federal right to petition the government for redress of grievances.

### State–Created Constitutional Right

O'Keefe contends that treatment of his government agency mail as regular mail also violates a state-created constitutional right. Specifically, O'Keefe contends that the state created such a right by defining "legal mail" in the Washington Administrative Code (WAC) as ".... Legal mail may also be mail to or from any local, county, state, or national, or foreign governmental agency." [12] WAC 137–48–020(8).[13]

---

**10.** Note that postage costs will not be affected by defendants' treating grievance mail as legal mail rather than regular mail. While indigent prisoners are permitted a set amount of postage, DOP Policy 450.100(VI)(H)(4), the postage is used for both regular and legal mail; indigent prisoners sending grievance mail are not entitled to additional postage. While an indigent prisoner is permitted to mail an infinite number of legal pleadings, despite the postage limit, DOP Policy 450.100(VI)(H)(4)(a), legal pleadings are limited to mail to courts rather than government agencies. An indigent prisoner need not be permitted to mail an infinite number of grievances.

**11.** Note that inspection of mail currently is defined to include "the use of mechanical or chemical systems and/or the use of animals," DOP Policy 450.100(IV)(G), but these methods are rarely used.

**12.** Defendants contend that the Administrative Procedure Act does not apply to DOC rules regarding inmates, and therefore that DOC provisions within the WAC may be changed by the secretary of the DOC at any time, at his sole discretion. *See* RCW 34.05.030(1)(c); WAC 137–

48–020 (reviser's note). The Court does not reach this issue, or the related issue of whether by enacting policy at variance with the WAC the DOC/DOP has in fact modified the WAC.

**13.** The DOC policy provisions differ from the WAC in their exclusion of government agencies and government officials from the list of legal mail correspondents. The WAC provides:

"Legal mail" is correspondence to or from courts and court staff (judges, clerks of the court, judicial law clerks, etc.), attorneys and persons working for attorneys and to established groups involved in the representation of inmates in judicial proceedings (ACLU, legal services groups, etc.). Legal mail may also be mail to or from any local, county, state, or national, or foreign governmental agency, executive or legislative body, and/or any person representing such agency or body in an official capacity.

Note: To be considered and therefore handled as "legal mail" the correspondence must be clearly marked "legal mail" on the outside front of the envelope.

O'Keefe argument fails for two reasons. First, state law only establishes a liberty interest if it places substantive limitations on the exercise of official discretion. *Smith v. Noonan,* 992 F.2d 987, 989 (9th Cir.1993). The limitations must contain mandatory language such as "will", "shall", or "must" requiring specific, substantive predicates. *Id.* WAC 137–48–020(8) merely states that agency mail "may" be treated as legal mail, apparently at the discretion of mail personnel; it does not contain mandatory language.

Second, a claim for violation of due process under the Fourteenth Amendment requires a third element besides lack of process and government deprivation, namely a protected liberty or property interest. *Portman v. County of Santa Clara,* 995 F.2d 898, 904 (9th Cir.1993). WAC 137–48–020(8), in merely defining legal correspondents, does not grant O'Keefe a liberty or property right.

### E(2). OPENING OF MAIL

O'Keefe's second contention is that three of his six letters were opened out of his presence. The Court's holding, above, was

> WAC 137–48–020(8). DOC policy, in contrast, provides:
>> Legal Mail—*must meet* the following requirements:
>> 1. Correspondence to or from courts and court staff, attorneys, established groups of attorneys involved in the representation of offenders in judicial proceedings (i.e., American Civil Liberties Union, legal services groups, etc.), the President or Vice President of the United States, members of the United States Congress, embassies, and consulates, the United States Department of Justice, state attorneys general, governors, members of state legislature, and law enforcement officers.
>> 2. Incoming legal mail *must* have the return address on the front of the envelope which must clearly indicate that it is from one of the sources identified in Section 1 of this definition.
>> 3. In addition to the foregoing, the front of the envelope must be clearly marked "Legal Mail."
>
> DOC Policy 450.100 (effective November 1, 1992), attached as Exhibit A to Defendants' Statement of Material Facts. Similarly, the DOP's own policy provides:
>> Legal Mail—is defined as mail meeting the following requirements:
>> *Correspondence to or from courts and court staff, attorneys, established groups of attorneys

that reading grievance mail (after opening) violates O'Keefe's right to petition the government for redress of grievances, but that inspecting grievance mail in his presence (after opening) does not. The Court therefore has already addressed the constitutionality of opening grievance mail.

### E(3). DELAY IN MAILING

O'Keefe's third contention is that some or all of the six letters were retained by WSP for more than eleven business days. Any delay resulted from the ping-ponging of mail between mail personnel, who refused to send the mail as legal mail, and O'Keefe, who refused to send the mail as regular mail or (for three of the pieces of mail) accept the rejected mail.

Because the Court resolves the ping-ponging, and because O'Keefe seeks declaratory and injunctive relief as to the policy at issue rather than a finding as to whether the mail was opened (or compensatory relief for mail-opening), the Court does not reach the issue of delay.

> involved in the representation of offenders in judicial proceedings (i.e., American Civil Liberties Union, legal services groups, etc.), the President or Vice President of the United States, members of the United States Congress, embassies, and consulates, the United States Department of Justice, state attorneys general, governors, members of state legislature, and law enforcement officers in their official capacity.
>> *Mail between inmates who are verified to be co-parties to the same legal proceeding and which contains personal legal documents/papers and/or a legal pleading.
>> *Incoming mail must have the return address on the front of the envelope which must clearly indicate that it is from one of the above listed sources.
>> *The front of the envelope must be clearly marked **LEGAL MAIL.**
>
> DOP Policy 590.500 (effective August 5, 1993), attached as Exhibit B to Defendants' Statement of Material Facts. Defendants contend that despite the WAC definition, mail to government agencies is not legal mail under the DOC/DOP policy definition (and that where they conflict with the WAC, DOC/DOP policy has replaced the WAC definition).

## F. RELIEF

**IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment is **DENIED.**

2. Plaintiff's implied Motion for Summary Judgment is **GRANTED.**

3. DOP Policy 450.100, to the extent it permits prison officials to read prisoners' grievances to government agencies or officials (or the agencies and officials' replies), violates prisoners' First Amendment right to petition the government for redress of grievances.

4. DOP Policy 590.500, to the extent it permits prison officials to read prisoners' grievances to government agencies or officials (or the agencies and officials' replies), violates prisoners' First Amendment right to petition the government for redress of grievances.

5. Defendants are permanently enjoined from reading prisoners' grievances to government agencies or officials (or the agencies and officials' replies).

6. Defendants are permanently enjoined from opening prisoners' grievances to government agencies or officials (or the agencies and officials' replies), except in the presence of those prisoners.

**IT IS SO ORDERED.** The Clerk is instructed to enter this Order accordingly and forward copies to plaintiff and counsel. The Clerk is instructed further to enter an Order of Judgment and forward copies to plaintiff and counsel.

## ORDER DENYING RECONSIDERATION AND GRANTING MOTION FOR SANCTIONS

Before the Court are Defendants' Motion for Reconsideration/to Amend Judgment and Motion to Stay Judgment, **Ct.Rec. 53;** Plaintiff's Motion for Sanctions, **Ct.Rec. 58;** Plaintiff's Motion to Dismiss Rehearing as Moot, **Ct.Rec. 69;** and Plaintiff's Motion for Judgment on the Pleadings, attached to **Ct.Rec. 69.** On hearing without oral argument, Plaintiff appeared *pro se.* Defendants were represented by Douglas W. Carr of the Attorney General of Washington, Olympia, Washington.

## A. BACKGROUND

O'Keefe, a Washington State Penitentiary (WSP) inmate, sued defendants, administrators of WSP, under 42 U.S.C. § 1983. O'Keefe alleged that defendants refused to treat six of his outgoing letters to government agencies/officials as legal mail. O'Keefe contended that this conduct violates the First Amendment (freedom of speech and access to the courts); the Fourth Amendment (freedom from unreasonable search and seizure); the Fifth Amendment (equal protection of law and due process of law); the Fourteenth Amendment (property and liberty interests); and federal criminal statutes.

On June 2, 1994, the Court entered summary judgment in favor of O'Keefe. The Court found that O'Keefe's outgoing mail, when sent to government agencies or officials as a grievance ("grievance mail"), is protected by his First Amendment right to petition the government for redress of grievances, and that the Department of Prisons' ("DOP") policy of reading grievance mail unconstitutionally impinges on this right. The Court ordered declaratory and injunctive relief:

3. DOP Policy 450.100, to the extent it permits prison officials to read prisoners' grievances to government agencies or officials (or the agencies and officials' replies), violates prisoners' First Amendment right to petition the government for redress of grievances.

4. DOP Policy 590.500, to the extent it permits prison officials to read prisoners' grievances to government agencies or officials (or the agencies and officials' replies), violates prisoners' First Amendment right to petition the government for redress of grievances.

5. Defendants are permanently enjoined from reading prisoners' grievances to government agencies or officials (or the agencies and officials' replies).

6. Defendants are permanently enjoined from opening prisoners' grievances to government agencies or officials (or the agencies and officials' replies), except in the presence of those prisoners.

Order on Motion for Summary Judgment ("Order"), Ct.Rec. 49, at 14–15.

Defendants move for reconsideration. Defendants initially moved to expedite hearing on their motion for reconsideration. The Court declined to expedite and ordered defendants to "file a supplemental memorandum addressing the issues that they contend they were denied opportunity to brief, within ten days of receipt of this Order." Order Denying Expedited Hearing and Ordering Further Briefing, Ct.Rec. 57, at 2. Defendants timely filed their supplemental memorandum.

O'Keefe moves for sanctions. He alleges that defendants have not removed a certain mail room sign and that this sign is inconsistent with the Court's injunction. O'Keefe requests that the Court order removal of the sign. O'Keefe further contends that WSP's new policy of requiring incoming grievance mail to be so labeled violates the Court's injunction.

O'Keefe also moves to strike the "rehearing", contending that it is moot by the Court's denial of defendants' motion to stay judgment.

Finally, O'Keefe moves for judgment on the pleadings.

### B. MOTION FOR JUDGMENT ON THE PLEADINGS

O'Keefe contends that:

1. The pleading have been closed;

2. No issue of material fact or valid defense is presented by the defendant's pleadings; and

3. The undisputed facts entitle plaintiff to judgment on the pleadings as a matter of law and to the relief sought in the amended complaint.

Motion for Judgment on the Pleadings, at 1.

O'Keefe received the relief he now seeks when the Court granted summary judgment in his favor. Therefore, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Judgment on the Pleadings is **DENIED AS MOOT.**

1. This description largely parallels the language of the rule, except that Rule 60(b)(6) lists "any

### C. MOTION TO STRIKE REHEARING

O'Keefe contends that hearing of "Defendants' Motion for Reconsideration/to Amend Judgment and Motion to Stay Judgment" is moot because the Court already has denied the motion.

O'Keefe is incorrect. The Court denied defendants' motion to expedite hearing of their motion for reconsideration, and impliedly denied a stay of the judgment pending reconsideration. The Court has not yet ruled on the merits of the motion for reconsideration. To the extent O'Keefe may object to reconsideration of defendants' motion for summary judgment, he is referred to Fed.R.Civ.P. 59(e) and 60(b).

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Dismiss Rehearing as Moot is **DENIED.**

### D. MOTION FOR RECONSIDERATION

*Standard for Reconsideration.* "A district court may reconsider its grant of summary judgment under either Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment)." *School Dist. No. 1J v. ACandS, Inc.,* 5 F.3d 1255, 1262 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2742, 129 L.Ed.2d 861 (1994).

Under Rule 59(e),

Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. There may also be other, highly unusual, circumstances warranting reconsideration.

*School Dist. No. 1J,* 5 F.3d at 1263 (citing other authority).

Rule 60(b) "provides for reconsideration only upon a showing of (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) 'extraordinary circumstances' which would justify relief[1]." *Fuller v. M.G. Jewelry,* 950

other reason justifying relief from the operation

F.2d 1437, 1442 (9th Cir.1991) (footnote added). A Rule 60(b) motion is interpreted liberally. *Yniques v. Cabral,* 985 F.2d 1031, 1034 (9th Cir.1993); *SEC v. Seaboard Corp.,* 666 F.2d 414, 417 (9th Cir.1982).

*Defendants' Contentions.* Defendants move for reconsideration on three grounds: (1) that the Court had no authority to infer a motion for summary judgment by O'Keefe; (2) that certain authority cited by the Court regarding the right to grievance mail has been overruled; (3) that defendants' policy of treating mail between inmates, and government agencies and officials, as regular mail does not infringe O'Keefe's right to petition the government for redress of grievances; and (4) to the extent defendants' policy infringed O'Keefe's right, the policy is nonetheless valid because it is reasonably related to legitimate penological interests. Defendants also assert (5) that the Court's order is vague because it does not define "grievance", "government agency" or "government official."

*O'Keefe's Contentions.* O'Keefe has made no response.

1. *Authority to Consider Implied Motions.* The Court granted summary judgment to O'Keefe after defendants, but not O'Keefe, had moved for summary judgment. Defendants filed supporting and reply memoranda; O'Keefe filed responsive memoranda. Defendants contend that the Court had no authority to infer a motion for summary judgment by O'Keefe.

A court may *sua sponte* grant summary judgment if the losing party has had full opportunity to brief the relevant issues:

> As a general rule, a district court may not sua sponte grant summary judgment on a claim without giving the losing party ten days' notice and an opportunity to present new evidence as required by Federal Rule of Civil Procedure 56(c). There is an exception to this rule, however: A district court may grant summary judgment without notice if the losing party has had a " 'full and fair opportunity to ventilate the issues involved in the motion.' "

*United States v. Grayson,* 879 F.2d 620, 625 (9th Cir.1989) (internal citations omitted).

*See also, Sohappy v. Hodel,* 911 F.2d 1312, 1320 (9th Cir.1990) ("the government should be afforded an opportunity to present evidence [on the issue]").

Here, defendants had full opportunity to brief the issues, by briefing their own motion for summary judgment (on all claims). (In fact, by briefing their own motion they had two briefing opportunities, rather than the one opportunity provided a nonmovant.) Their briefs supporting summary judgment in their favor were by their nature also opposing judgment in O'Keefe's favor.

Defendants argue that they were denied an opportunity to present a *Turner v. Safley* analysis, as presented in the Court's Order. However, the Court frequently raises arguments not discussed by parties; the Court is not limited to parties' arguments, and the parties are not entitled to rebuttal of arguments raised for the first time by the Court.

Even if defendants were denied full briefing opportunity, that injury was remedied when the Court ordered supplemental briefing from defendants. Therefore, defendants suffered no prejudice. The Court's inference of O'Keefe's implied motion was not "manifestly unjust," and is not grounds for reconsideration.

2. *Validity of Case Authority.* Defendants contend that certain authority cited by the Court regarding the right to grievance mail has been overruled.

The Court's Order stated:

> [I]t is an issue of first impression in this Circuit whether mail between an inmate and non-attorneys—i.e., government agencies and officials—is similarly protected. The Court is informed by the opinion of another district court considering the issue:

> > Although the Seventh Circuit does not appear to have addressed the issue of inmate mail from elected officials or government agencies, it seems to be settled that such mail is entitled to the same protection as mail from attorneys. *Taylor v. Sterrett,* 532 F.2d 462, 478–481 (5th Cir.1976). Attorney mail touches

of the judgment." The *Fuller* court's description

hence limits the broad language of the rule.

upon the Sixth Amendment right to counsel in criminal proceedings and the First Amendment right to access to courts; mail from elected officials and government agencies touches upon the inmate's First Amendment right to petition the government for redress of grievances.

*Faulkner v. McLocklin,* 727 F.Supp. 486, 490 (N.D.Ind.1989). Order on Motion for Summary Judgment, at 5–6. The Order concluded that discussion:

> The Court finds that O'Keefe's outgoing mail, when sent to government agencies or officials as a grievance, is protected by his First Amendment right to petition the government for redress of grievances.

Order, at 6 (footnote omitted). The Court then discussed whether defendants' regulations unconstitutionally infringed on O'Keefe's grievance mail rights, by applying the *Turner v. Safley* analysis.

Defendants contend that the authority cited by the Court (in finding a grievance mail right) has been overruled:

> In *Brewer v. Wilkinson,* 3 F.3d 816 (5th Cir.1993) [*cert. denied,* ―― U.S. ――, 114 S.Ct. 1081, 127 L.Ed.2d 397 (1994) ], the Fifth Circuit held that all types of mail, including legal mail, may be opened outside the presence of prisoners by prison authorities. (*See also Walker v. Navarro County Jail,* 4 F.3d 410 (5th Cir.1993) [*reh'g denied,* 1993 U.S.App. LEXIS 32,037

(5th Cir. Nov. 19, 1993)) ]. *Brewer* explicitly overruled *Taylor v. Sterrett,* 532 F.2d 462 (5th Cir.1976). The case relied upon by this Court to grant summary judgment to plaintiff, *Faulkner v. McLocklin,* 727 F.Supp. 486 (N.D.Ill.1989), relies upon the *Taylor v. Sterrett* case which has now been explicitly overruled.

Memorandum in Support of Defendants' Motion for Reconsideration/to Amend Judgment and Motion to Stay Judgment, Ct.Rec. 55, at 7.

Defendants overstate the case. First, neither of the cases they cite—*Brewer* or *Walker*—discusses grievance mail rights.[2]

Second, *Brewer* questions only the strict scrutiny standard applied by the *Sterrett* court to restrictions on mail rights, not *Sterrett*'s finding that grievance mail rights exist. *Brewer,* 3 F.3d at 823 ("*Sterrett*'s requirement of 'least restrictive means' and a 'substantial or important governmental interest' in the context of prison regulation of legal mail appears to have been modified.").[3] Neither *Faulkner* nor this Court relied upon *Sterrett*'s scrutiny standard. *Faulkner* merely referenced *Sterrett*'s finding that grievance mail rights exist; this Court referenced *Faulkner* for the same purpose.[4]

The Court did not rely on invalid authority or otherwise err. *Brewer* and *Walker* do not constitute grounds for reconsideration.

---

**2.** *Brewer* addressed whether prison officials' "opening incoming legal mail from various courts, attorneys, and government officials and inspecting it for contraband outside of their presence" violated inmates' right of access to the courts, and right to free speech. 3 F.3d at 818, 820.

*Walker* addressed whether prison officials' returning mail "from a friend" to sender while an inmate was in solitary violated the inmate's right of access to the courts, and right to free speech. 4 F.3d at 412, 413.

Defendants may be suggesting that these courts impliedly stated that there is no grievance mail right, because they discussed only two rights implicated by prison interference with inmate mail. This Court rejects the implication. *Brewer* clearly limited its discussion to "legal mail" in the traditional sense of court and attorney correspondence; it did not discuss grievance mail. (*Brewer* mentions mail "from government officials", but only in a catalogue of court and

attorney correspondents. Like those of the DOC here, the prison in *Brewer* defined legal mail to include certain but not all government officials.)

*Walker* concerned mail "from a friend," and did not raise grievance mail issues.

**3.** *Brewer* went on to describe the less intensive scrutiny prescribed by the U.S. Supreme Court in *Thornburgh v. Abbott,* 490 U.S. 401, 419, 109 S.Ct. 1874, 1884, 104 L.Ed.2d 459 (1989) and *Turner v. Safley,* 482 U.S. 78, 89–90, 107 S.Ct. 2254, 2261–62, 96 L.Ed.2d 64 (1987) for examination of prison regulations infringing prisoner mail rights. *Brewer* stated that these cases modify the strict scrutiny standard applied by *Sterrett.* This Court, like the *Brewer* court, applied the *Turner* analysis.

**4.** Further, this Court did not "rely" on *Faulkner,* which is a district court opinion from another circuit, but merely was "informed" by it.

3. *Impact of Policy on O'Keefe's Right to Petition.* Defendants challenge the Court's finding that "[t]o permit prison officials to read prisoners' 'grievance mail' would cause the same chilling of meritorious petitions as with officials' reading mail to attorneys or courts." Order, at 6–7. They contend that an unconstitutional "chill" can arise only when the governmental act carries with it a direct threat of injury (citing *Wisconsin v. Mitchell,* —— U.S. ——, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993); *Laird v. Tatum,* 408 U.S. 1, 11, 92 S.Ct. 2318, 2324, 33 L.Ed.2d 154 (1972), *reh'g denied,* 409 U.S. 901, 93 S.Ct. 94, 34 L.Ed.2d 165 *and reh'g denied,* 479 U.S. 911, 107 S.Ct. 309, 93 L.Ed.2d 284 (1986) ("[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm")). They allege that the DOC does not prohibit inmates from, or sanction them for, making complaints or grievances. Therefore, they conclude, reading the mail would not chill inmates' exercise of grievance mail rights, and in fact has not chilled O'Keefe's rights ("Mr. O'Keefe has not been shy to present grievances").

O'Keefe's situation is not that of *Laird,* where civilians alleged that U.S. Army surveillance of lawful political activity (including street demonstrations) impermissibly chilled their First Amendment speech and assembly rights. *Laird*'s civilians could not describe specific future harm to their exercise of rights.

O'Keefe, however, is under the custody and control of defendants. His mail (and to a limited extent, telephone use) is the mechanism by which he can exercise his rights to petition the government for redress, including redress of conditions caused by defendants; without grievance mail rights that mail is subject to reading by defendants. O'Keefe's situation is far less like *Laird*'s civilians that it is like a child who writes freely in her diary only when she believes it to be hidden from her parents; an employee complaining of job mistreatment only when he believes that he is not overheard by his boss; or a soldier who criticizes the war effort only when she is off-duty. Regardless

of defendants' regulations to the contrary (or their good intentions), O'Keefe could reasonably believe that a prison official reading O'Keefe's complaints would exact retribution for the complaints or impair O'Keefe's ability to complain. O'Keefe's subjective belief, in the context of defendants' control over his life, creates the threat of a specific future harm.

Thus, the Court did not err in analyzing the chilling effect of defendants' regulations. Defendants' provision of the Hinojosa and Uribe affidavits do not provide facts meriting reconsideration.

4. *Rational Relation of Policy to Government Interests.* "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987) (citing *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987)). Thus, the Court's Order analyzed whether defendants' policy of reading grievance mail unconstitutionally impinged on O'Keefe's grievance mail right, by examining four factors set forth in *Turner.* Defendants contend that the Court improperly analyzed these factors.

The first factor is the rational relation of policy to legitimate government interests. The Court found that prison security and public security were legitimate government interests, but that there was no rational relation between these interests and the reading of grievance mail. (The Court *did* find a rational relation between prison or public security interests, and the *inspection* of grievance mail.) Defendants state, without more, that their security interests justify reading of grievance mail; they do not provide grounds for reconsideration. They also claim that reading of mail is rationally related to the government interest of efficiency. (According to defendants, which allegation is not disputed by O'Keefe, it costs significantly more time, expense and personnel to process grievance mail than non-grievance mail.[5])

5. [L]ogging, verifying, and opening of legal mail

in front of inmates is much more time consum-

The Court reconsiders its *Turner* analysis to the limited extent of recognizing efficiency as a government interest justifying the reading of grievance mail.

The second factor is whether there exist alternative means for the prisoner to pursue his right. The Court found that because O'Keefe is incarcerated, mail is his only method of petition. Defendants contend that O'Keefe may send legal mail to various groups (including certain government agencies and officials) under DOP Policy 590.500:

> **Legal Mail**—is defined as mail meeting the following requirements:
>
> *Correspondence to or from courts and court staff, attorneys, established groups of attorneys involved in the representation of offenders in judicial proceedings (i.e., American Civil Liberties Union, legal services groups, etc.), the President or Vice President of the United States, members of the United States Congress, embassies, and consulates, the United States Department of Justice, state attorneys general, governors, members of state legislature, and law enforcement officers in their official capacity.

Further, they contend that O'Keefe may file grievances with the prison. Finally, he may file lawsuits. The Court considered all of these possibilities at the time of its Order. They do not permit full exercise of grievance mail rights. The First Amendment grants an unrestricted right to petition the government for redress of grievances; defendants' possibilities are severely limited. DOP's legal mail definition and internal grievance system hardly permit petitioning *all* government agencies and officials; lawsuits unduly restrict the type of petition (*e.g.*, an inmate cannot sue his senator for review of his sentencing, or for attention to his criticism of

firearms statutes). Thus, defendants provide no grounds for reconsideration of this factor.

The third factor is the impact of the unrestricted right on the prison. The Court found that "[d]efendants' restraint from reading grievance mail, if they are still permitted to inspect the mail, will increase slightly the administrative cost of processing prisoner mail." Order, at 9. Defendants contend that treating grievance mail as legal mail will increase *significantly* their administrative cost, perhaps to the extent of requiring another mailroom employee. Thus, the Court contemplated an administrative cost increase similar to that described by defendants. Defendants label this cost "significant," while the Court labelled it "slight" (in comparison to defendants' other costs). Defendants provide no new facts meriting reconsideration of this factor.[6]

The fourth and final factor is whether there exist alternative means for the prison to pursue its government interests. Defendants contend that there exist no easy or obvious alternatives, but the Court previously found several. The Court found that defendants could use non-invasive investigatory techniques outside of the presence of the prisoner; could require grievance mail to be labelled "GRIEVANCE" or to be addressed to an administrative complaint department (thereby lessening the amount of true grievance mail and so lessening their expense to process suspect grievance mail); or could merely inspect grievance mail in the prisoner's presence. (As discussed below regarding sanctions, WSP in fact *has* recently required grievance mail to be so labelled.) Defendants do not challenge these suggested alternatives or provide any other grounds for reconsideration of this factor.

In conclusion, a re-analysis of the *Turner* factors reveals that defendants' treatment of

---

ing and burdensome than treating this mail as regular mail which need not be logged, verified, or opened in the inmate's presence.... If the amount of legal mail were increased significantly, it is likely that the WSP would have to hire an additional worker in the mailroom.

Supplemental Memorandum in Support of Defendants' Motion for Reconsideration, Ct.Rec. 61, at 10 (citing the affidavit of the acting sergeant of the WSP mailroom).

**6.** The Court notes that defendants' policy of treating grievance mail is a recent one. Apparently, defendants formerly treated grievance mail as legal mail, prior to the adoption to DOC Policy 450.100 (effective November 1, 1992) and DOP Policy 590.500 (effective August 5, 1993). The long-standing previous policy may suggest that the administrative expense of the policy was not onerous.

grievance mail as regular mail (subject to reading) does serve their interests of safety and efficiency. However, there do not exist alternative means for O'Keefe to pursue his grievance mail right; the impact of treating grievance mail as legal mail is only a slight administrative cost increase; and there exist alternative means for the prison to pursue its government interests (such as a mail labelling requirement, which already has been imposed). There are no new facts or errors meriting reconsideration of the summary judgment award.

5. *Vagueness of Order.* The Court's Order defined "grievance mail" as "outgoing mail, when sent to government agencies or officials as a grievance". Order on Motion for Summary Judgment, at 6. Defendants assert that the Court's order is vague because it does not define "grievance", "government agency" or "government official."

The term "government agency" has a common meaning: a department of the United States government, of a U.S. state, or of a subdivision of a U.S. state. Similarly, "government official" has a common meaning: an elected or appointed employee of a government agency, who holds a particular public office. The term "grievance" has a meaning provided by the First Amendment: a petition for redress. As the Court noted previously, the grievance need not be related to the inmate's incarceration. Order on Motion for Summary Judgment, at 6 n. 8. As was obvious from the context of this case, grievances here are in written form, from inmates, and submitted to the United States Post Office (via the WSP mail room) for transport.

Defendants fail to allege sufficient grounds for reconsideration.

*Conclusion.* While the Court has considered the new arguments and affidavits presented in defendants' supplemental memorandum, it does not find new facts or errors meriting reconsideration or a stay of judgment. Therefore, **IT IS HEREBY ORDERED** that Defendants' Motion for Reconsideration/to Amend Judgment and Motion to Stay Judgment is **DENIED.**

### E. MOTION FOR SANCTIONS

■ *Standard for Imposition of Sanctions for Failure to Comply with Judgment.* This Court has an inherent, broad power to sanction parties appearing before it. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 *reh'g denied,* 501 U.S. 1269, 112 S.Ct. 12, 115 L.Ed.2d 1097 (1991). It is especially appropriate that the Court consider whether defendants have violated the permanent injunction that the Court itself fashioned, the scope of which already has been challenged (by defendants' motion for reconsideration). O'Keefe alleges that defendants twice have violated the injunction.

### E(1). MAIL ROOM SIGN

■ *O'Keefe's Contentions.* O'Keefe alleges that defendants have not removed a certain mail room sign, that this sign is inconsistent with the Court's declaratory judgment, and that the sign chills inmate grievance mail rights. O'Keefe requests that the Court order removal of the sign.

*Defendants' Contentions.* Defendants do not dispute that the mail room sign remains.

*Discussion.* The parties have not provided the Court with a copy of the mail room sign at issue. However, they agree that it states the Department of Correction's definition of legal mail:

Legal Mail—*must meet* the following requirements:

1. Correspondence to or from courts and court staff, attorneys, established groups of attorneys involved in the representation of offenders in judicial proceedings (i.e., American Civil Liberties Union, legal services groups, etc.), the President or Vice President of the United States, members of the United States Congress, embassies, and consulates, the United States Department of Justice, state attorneys general, governors, members of state legislature, and law enforcement officers.

2. Incoming legal mail *must* have the return address on the front of the envelope which must clearly indicate that it is from one of the sources identified in Section 1 of this definition.

3. In addition to the foregoing, the front of the envelope must be clearly marked "Legal Mail."

DOC Policy 450.100.

Continued posting of this sign is in violation of the permanent injunction. The Court found that this regulation was invalid "to the extent it permits prison officials to read prisoners' grievances to government agencies or officials (or the agencies and officials' replies)." The obvious implication of the sign is that letters to and from government agencies and officials are regular mail, because they are not legal mail. This implication that grievance mail is subject to opening and reading is contrary to the permanent injunction. Therefore, **IT IS HEREBY ORDERED** that defendants perform one of the following: (1) removing mail room signs containing the text of DOC Policy 450.100; (2) amending mail room signs containing the text of DOC Policy 450.100, to include grievance mail as a category of legal mail; or (3) amending mail room signs containing the text of DOC Policy 450.100, by adding a separate provision providing that grievance mail will be treated similarly to legal mail.

Note that defendants have not been ordered to educate the prisoners on their grievance mail rights. However, if defendants *choose* to educate prisoners regarding their mail rights, as by posting signs, they cannot make statements denying the prisoners' grievance mail rights.

### E(2). LABELLING REQUIREMENT

█ *O'Keefe's Contentions.* O'Keefe alleges that Washington State Penitentiary Superintendent Tana Wood, not a party, stated "that it is my responsibility to advise all government agencies to mark my mail as legal mail/Grievance or it will not be treated as legal mail." Declaration in Support of Motion for Sanctions, Ct.Rec. 60, at 1. O'Keefe contends that the statement chills his grievance rights. However, O'Keefe does not seek sanctions against Wood or relief from Wood's statement.

*Defendants' Contentions.* Defendants do not dispute the substance of Wood's memorandum to O'Keefe. They do dispute that their labelling requirement has a chilling effect on grievances, or that it violates the Court's injunction:

This Court has already determined that prison officials may require prisoner grievance mail to be specially marked in order to be treated as legal mail:

They could require grievance mail to be marked "GRIEVANCE" or to be addressed to an administrative complaint department, thereby lessening the amount of true grievance mail and so lessening their expense to process suspect grievance mail.

Defendants' Response to Motion for Sanctions, Ct.Rec. 62, at 2, quoting Order on Motion for Summary Judgment, at 10.

*Discussion.* The parties have not provided the Court with a copy of Wood's written statement to O'Keefe.[7] The parties agree on its substance: that Wood told O'Keefe that unless incoming mail were marked "grievance mail", it would not be treated as grievance mail.

Because O'Keefe in his complaint discussed only outgoing mail, the Court's Order on summary judgment addressed only outgoing mail.[8] However, O'Keefe now places treatment of his incoming mail at issue, so that the Court can address the issue of whether required labeling of incoming grievance mail unconstitutionally infringes O'Keefe's right to grievance mail, under the test of *Turner v. Safley,* 482 U.S. 78, 89–90, 107 S.Ct. 2254, 2261–62, 96 L.Ed.2d 64 (1987).

The *Turner* test is a two-part one: first, does a prison regulation impinges on inmates' constitutional rights? Only if it impinges does the Court reach the second part of the test: is the regulation reasonably related to legitimate penological interests (us-

---

7. Defendants mention that O'Keefe submitted the memorandum to them. Defendants' Response to Motion for Sanctions, Ct.Rec. 62, at 2. He did not file it with the Court.

8. This Court is prohibited from entering advisory opinions. *See Flast v. Cohen,* 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968); *Hillblom v. United States,* 896 F.2d 426, 430 (9th Cir.1990).

ing the factors of a rational relation of policy to government interests, existence of alternative means for prisoners to pursue the right, impact of the unrestricted right on the prison, and existence of alternative means for the prison to pursue government interests)? If so, the regulation is valid; if not, it is invalid.

*Impact of regulation on inmates' rights.* Just as O'Keefe has a First Amendment right in outgoing grievance mail to government agencies and officials, he has a right in incoming response mail. To rule otherwise would render his right to petition meaningless. Further, response mail necessarily references the initial petition, so that any confidences disclosed in the petition might be disclosed in the response; any right to privacy in outgoing grievance mail therefore must attach to incoming response mail.

However, the right attaches to *responses* to inmate grievance mail, not merely *any* government mail; the right to grievance mail is one of the individual to petition to the government, not the converse.

Requiring inmates to contact their respondents and request that response mail be labelled "grievance mail" before it will be considered grievance mail does impinge on inmates' grievance mail rights. The Court thus applies the second part of the *Turner* test: is the regulation reasonably related to legitimate penological interests?

*Rational relation of policy to government interests.* As with outgoing mail, the government interests involved are prison security and public security. There is a rational relation between these interests and the reading of non-grievance mail. There is also a rational relation between these interests and the separation of grievance mail from non-grievance mail (by requiring incoming mail to be so labeled), to permit the reading of non-grievance mail.

Separating grievance mail from non-grievance mail also serves the government interest of administrative efficiency. According to defendants, which allegation is not disputed by O'Keefe, it costs significantly more (time, expense and personnel) to process grievance mail than non-grievance mail. There is a rational relation between the interest of efficiency and the labelling requirement.

*Existence of alternative means for prisoners to pursue the right.* As with outgoing mail, O'Keefe lacks alternative means of exercising his right to petition the government. As he is incarcerated, mail is his only method of petition.

*Impact of the unrestricted right on the prison.* According to defendants, which allegation is not disputed by O'Keefe, to require defendants to treat all incoming mail from government agencies and officials as responsive grievance mail would require them to hire more mail room personnel to handle the increase in administrative cost of processing mail.

*Existence of alternative means for the prison to pursue government interests.* Defendants have imposed the labelling requirement on inmates' correspondents, not inmates. Inmates who desire their correspondence to be treated as grievance mail are at the mercy of government mail departments that might overlook their labelling request, thereby waiving inmates' rights to privacy in the mail.

The Court observes alternative means for the prison to pursue its interest in separating grievance mail from non-grievance mail, while ensuring that *inmates* remain responsible for deciding what incoming mail is responsive to their petitions, and while ensuring that inmates' vindication of their rights is not overly burdensome. An inmate could add to his return mailing address the phrase "grievance mail" or "legal mail"; even an agency responding by a form letter would thereby label its response as grievance mail. Defendants also might consider all incoming mail from government agencies or officials, that includes in the agency/official's return address name one of the phrases "appeal", "grievance" or "complaint", to be grievance mail. Defendants also might consider all incoming mail from government agencies or officials, that arrives in a specially-marked envelope (provided by the inmate with his grievance) to be grievance mail.

*Conclusion.* Defendants' interest in separating incoming grievance mail from non-

grievance mail is a valid one. However, by imposing upon inmates' correspondents the responsibility of labelling incoming grievance mail, defendants unconstitutionally impinges on prisoners' grievance mail rights. Defendants may impose a labelling requirement, but only if the inmate, not his correspondents, remain responsible for labelling the incoming mail. An automatic-labelling requirement, such as requiring an inmate to add to his return mailing address the phrase "grievance mail" or "legal mail" if he wished responsive mail to be considered grievance mail, would be valid.

Although O'Keefe does not request sanctions for the labelling requirement, this Court shall impose them. **IT IS FURTHER ORDERED** that defendants amend their policy that incoming grievance mail be labeled by the correspondent, to be commensurate with this Order. **IT IS FURTHER ORDERED** that the declaratory judgments and permanent injunctions granted in the Order on Motion for Summary Judgment, Ct.Rec. 49, at 14–15, apply also to incoming responses to inmate grievance mail from government agencies and officials.

*Additional Violations.* Since the entry of the Court's Order, several prisoners besides O'Keefe have alleged violations of the Court's permanent injunctions. *See* Letter from Rollis Spencer to Judge McDonald of 6/13/1994, contained in this case file; Affidavit of Merle L. Royse, attached to unnamed O'Keefe pleading of 8/5/1994; and *Lee v. Wood,* Case No. 93–370–CI.

Without depriving defendants of an opportunity to challenge the validity of these prisoners' assertions, the Court stresses that the injunctions apply to *all* prisoners, not merely O'Keefe. Further, the injunctions have not been stayed, and are not temporary. They are permanent unless, and until, this Court or the Ninth Circuit vacates them. The Court anticipates that defendants will comply fully with the injunctions, but the Court is prepared to act on any violations.

## F. CONCLUSION

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Judgment on the Pleadings is **DENIED.**

2. Plaintiff's Motion to Dismiss Rehearing as Moot is **DENIED.**

3. Defendants' Motion for Reconsideration/to Amend Judgment and Motion to Stay Judgment is **DENIED.**

4. Plaintiff's Motion for Sanctions is **GRANTED.**

**IT IS SO ORDERED.** The Clerk is instructed to enter this Order accordingly and forward copies to plaintiff and counsel.